(No. 24303.

MARGARET Y. CORCORAN, Appellant, *vs.* EDWIN L. WAUGH, Exr., *et al.* Appellees.

*Opinion filed February 16, 1938—Rehearing denied April 6, 1938.*

Louis N. Blumenthal, and Thomas J. Finnegan, for appellant.

Paul W. Schroeder, George Gillette, and John Mann, for appellees.

Mr. Chief Justice Farthing delivered the opinion of the court:

On August 22, 1936, Margaret Y. Corcoran filed suit in the circuit court of Cook county against Edwin L. Waugh, as executor and trustee under the last will and testament of James D. Corcoran, her deceased husband, and the remaining appellees, in which she asked that an instrument executed by her on November 11, 1918, purporting to release alimony and all rights of dower in Corcoran's real estate, be set aside and declared void. She also asked that her dower in real estate at Sheridan Road and Farwell avenue in Chicago, and in all other real estate Corcoran owned during their marriage, be assigned and set off to her pursuant to the statute, and that, after deducting $3000 she had received, there be found to be due and owing to her from his estate $70 a month, from January 1, 1916, to the date of his death, July 11, 1935, with interest on the several monthly payments of alimony at five per cent. Appellees' motion to strike was sustained; appellant elected to stand by her amended complaint and it was dismissed for want of equity.

From her amended complaint it appears that appellant and Corcoran were married November 28, 1899. Their daughter, Florence Corcoran, was born November 3, 1900, and has lived with appellant continuously. Because of cruel treatment by Corcoran, and through no fault of appellant, they separated on December 1, 1900. Through the years she supported herself and Florence and educated the

latter without help from Corcoran, except $3000 mentioned later, although he at all times had ample means to support his wife and daughter. He filed suit for divorce in Nevada about November 1, 1915. He still had the Sheridan Road property, which he had owned when they were married. It was worth $50,000. Corcoran never did disclose this ownership but, on the contrary, concealed it from his wife. She remained in ignorance of the fact until after his death and shortly before she brought this suit. Corcoran knew her impoverished condition and brought his divorce action in Nevada with the intent to defraud her of her dower right in all real estate he owned, to avoid his legal obligation to support her and the child, and to obtain custody of their daughter. She filed her cross-bill, and at the trial Corcoran concealed his ownership of real estate and falsely misrepresented his financial condition to the court. The findings of the Nevada court and its decree awarding her a divorce, custody of the child, and $70 per month for their support are made exhibits. Corcoran refused to comply with the decree and contributed nothing towards the support of his wife and child although he was well aware that they were destitute. It is alleged that on November 11, 1918, there was due appellant approximately $3000 as monthly payments and interest thereon; that Corcoran, with knowledge of appellant's impoverished condition and ignorance of his ownership of the unencumbered real estate worth upwards of $50,000, together with his agent, falsely and fraudulently represented to appellant that Corcoran was in an impoverished financial condition and did not own any real estate. He induced appellant to rely on these false statements and to execute a release of her right to support and of her dower rights in his real estate. A copy of the release is also made an exhibit. It is alleged that the $3000 paid her was the approximate amount then due and that there was no consideration for the release of future alimony and appellant's inchoate right of dower.

It is further alleged in the appellant's amended complaint that the day after the divorce decree was rendered in Nevada, Corcoran executed a deed conveying the Sheridan Road real estate to his nephew, Corrigan, and on November 12, 1918, the day after the release, he made another deed to Corrigan, in furtherance of his scheme to defraud appellant. In this latter deed, Corcoran styled himself attorney in fact for Mrs. Corcoran and it purported to convey her dower interest. The next day Corrigan conveyed the title in fee to Corcoran. The three conveyances were wholly without consideration, and appellant had no knowledge of them. She did not learn about them or that Corcoran had ever owned any real estate until after his death and shortly before she filed this suit.

There was, in the release, a general power of attorney to Corcoran to convey all interest Mrs. Corcoran had in any real estate he had formerly owned or might acquire, and it contained an agreement, on her part, to make necessary deeds, etc. Corcoran died testate, July 11, 1935, and his will was admitted to record in the probate court of Cook county, August 29, 1935. Waugh qualified as executor. Neither Corcoran nor appellant ever remarried. He left his daughter, Florence, as his only heir-at-law and bequeathed her $5000. At his death he was seized in fee of the Sheridan Road property, other real estate, and personal property. There was no mortgage on the Sheridan Road property. Dower was never assigned to appellant and she alleges she never received any compensation therefor. She alleges that, after deducting the $3000, Corcoran's estate still owes her $20,500 by way of alimony and interest thereon. She offered to do equity in the premises.

In support of the decree the appellees say appellant was guilty of *laches,* and that her allegations of fraud are insufficient. They rely on our holding in *Wandschneider* v. *Wandschneider,* 282 Ill. 286. There the trial court had

sustained a demurrer to the bill, and, on a direct appeal, we held that the allegation of fraud was insufficient and that appellant was guilty of *laches* because he had not investigated the records in the probate court to ascertain what appellee had done with reference to his father's estate while she was administratrix thereof. The mother had resigned and later purchased the deceased's land at a sale to pay debts made by the administrator *de bonis non*. The appellant did not bring his suit until six years after he attained his majority. He sought to excuse this delay by his mother's statements to him that if he would take care of his father's business she would see that the money made would benefit him. This, and statements made in her inventory and her account as administratrix, were relied on as constituting fraud. In the case before us, appellant never knew about Corcoran's ownership of any land until after his death. He testified in the divorce case that he owned no property and had no other means. He and his agent stated he was impoverished and owned no real estate. If it is claimed that appellant was bound here, as in the *Wandschneider case,* to search records, what records would they be? Would it be in Nevada, where Corcoran probably claimed he resided, or Cook county where he died, or in some other county? There is no fact in the amended complaint or its exhibits that would point Mrs. Corcoran to the Sheridan Road land, or put her on notice or compel her to make inquiry. Even the power of attorney failed to do this. It was general and not only covered all land formerly owned but all land that might be acquired, just as the release purported to include alimony due and to become due. A party cannot be heard to say that he binds a defrauded opponent by an instrument obtained by fraud, and that the defrauded party is bound to investigate and to take notice that he may possibly have rights that the public records will disclose, if the only knowledge or cause for such inquiry is that contained in the instrument which he was induced

to sign by the fraud and covin practiced upon him. *Wilcox* v. *Howell,* 44 N. Y. 398; 21 Corpus Juris, p. 1138.

In *McCormick* v. *Miller,* 102 Ill. 208, through representations that he needed deeds to land occupied by him in order to obtain a loan on it, McCormick obtained conveyances of the remainder in fee from persons who did not know they were the owners. Investigation of the records would have disclosed their ownership and that McCormick only had a life estate, but the defrauded persons were held to have a right to recover back their remainder in the land. That case is not as favorable to the defrauded parties as is the case presented by Mrs. Corcoran for there the specific property was known, and here the fact of ownership and everything connected with this property not only was concealed, but Corcoran testified in the Nevada trial he owned little or no property, and he and his agent told Mrs. Corcoran that he owned none. These allegations of fraud were sufficient.

Appellant contends that unless *laches* appears on the face of the amended complaint, it cannot be availed of by motion to strike, and that her complaint does not show *laches*. A court of equity will not aid one who is guilty of unreasonable delay in asserting his rights, but there is no *laches* if neither knowledge nor the means of knowledge exist, and delay will, consequently, not bar relief where the injured party has remained, as here, in total ignorance of the fraud. The duty to institute suit arises only when the fraud is discovered. *Crimp* v. *First Union Trust and Savings Bank,* 352 Ill. 93, 101; *Regan* v. *Grady,* 343 id. 423, 429; *Wilson* v. *Augur,* 176 id. 561, 571; *Middaugh* v. *Fox,* 135 id. 344, 358.

Appellees rely on our holding in *Klee* v. *Chicago Trust Co.* 365 Ill. 354, and insist that death of a defrauding party prevents the injured party from maintaining his cause of action, if suit is begun after the death of the wrongdoer. In effect we held in that case that the death of the wrong-

doer is a circumstance which must be taken into consideration with all the other facts in deciding whether the defrauded party has been guilty of *laches*. Whether there is or is not such a delay that the claim will be treated as a stale claim, to the enforcement of which equity will not lend its aid, must, by the very nature of things, rest upon and be determined by the facts in every case. In the *Middaugh case, supra,* Noble had died after fraudulently concealing the existence of a trust for more than thirty years, and suit was brought within six months after the trust's existence was discovered. In the *Wilson case, supra,* the forgery occurred in 1863. It was discovered after Burns' death in 1896, and although an unsuccessful action of ejectment had been brought in 1882 we held there was no *laches*. In that case witnesses necessary to prove the forgery had kept silent through fear of Burns until his death. Here, Mrs. Corcoran brought her action within one year from her discovery of the fraud that had been practiced upon her and she cannot be charged with neglect for failing to investigate and discover the true facts during Corcoran's lifetime.

Appellees claim that Mrs. Corcoran did not sufficiently offer to do equity, because she did not tender back the $3000 or some part of it. Practically all of that money was due at the time for alimony and interest. Her daughter, Florence, had become of age just a short time before it was paid. If she was through fraud induced to release future payments of alimony, to which she would otherwise have been entitled until Corcoran's death, she is entitled to a decree for a much larger amount due her than the excess paid at the date of the release. In equitable proceedings for cancellation and recission, a party is not required to restore that which, in any event, he would be entitled to retain. (*Taylor* v. *Taylor,* 259 Ill. 524, 537, 538.) The court, in its decree, can protect the rights of appellees, and no actual tender is necessary. Mrs. Corcoran also alleged that after giving credit for the $3000

there remained due her more than $20,000, and offered to do equity. This was enough.

For the reasons stated the decree of the circuit court of Cook county is reversed and the cause is remanded to that court, with directions to overrule the motion to strike.

*Reversed and remanded, with directions.*