## LEON ANSCHELEWITZ, PROSECUTOR, v. BOROUGH OF BELMAR, RESPONDENT.

Argued May 6, 1948—Decided September 10, 1948.

Before Justices BODINE, HEHER and WACHENFELD.

For the prosecutor, *Milton M. & Adrian M. Unger.*

For the respondent, *Harry R. Cooper* and *Ward Kremer.*

The opinion of the court was delivered by

WACHENFELD, J.   Prosecutor seeks to have this court set aside a resolution of the Borough of Belmar dated March 9th, 1948, authorizing the advertising for bids and leasing of certain concessions on the boardwalk in the borough. He claims to have entered into a valid lease with the borough for the concessions for the period from February 4th, 1947, until February 4th, 1951.

Leon Anschelewitz, a holder of successive leases for beach-front premises of the borough, entered into a three-year lease for the various concessions involved on March 5th, 1945, for a term to expire on November 1st, 1947. He did not personally operate the concessions but sublet them at a handsome

profit. Although the terms of the lease required written approval of the sublessees, prosecutor sought only and was given oral approval by the borough.

In the latter part of 1946 the three borough Commissioners, Abbott, Lyman and Schroeder, and prosecutor discussed terms and conditions for a new lease. In February, 1947, prosecutor, wanting to leave on a vacation, requested the borough to consider signing the new lease. At the suggestion of the then Mayor, he appeared at an open borough meeting on February 4th, 1947, with copies of a new lease for the period from February 4th, 1947, to February 4th, 1951, upon the same terms as the prior unexpired lease but at a total rental of $11,500 instead of $6,500, an increase of only $250 for the year 1947. The old lease covered the 1947 summer season and the borough had ample time to enter into rentals for subsequent seasons. The reason ascribed for the making of the new lease was that Anschelewitz wanted security in order to make improvements upon the concessions and the borough Commissioners feared a possible economic recession. Significantly, however, the new lease did not contain any provision for improvements and was identical to the preceding lease except for amount of rental.

The minute books of the municipality show that on February 4th, 1947, Abbott and Lyman (Schroeder having died the preceding month) passed a resolution authorizing the borough solicitor to draw up a lease with the prosecutor for the concessions at $11,500 for the term commencing February 4th, 1947, and expiring February 4th, 1951. The lease, prepared and signed by Anschelewitz, was signed on the same date by Abbott on behalf of the borough in a side room.

Thereafter the question of letting concessions without advertising for bids became a prominent issue in the local campaigns for election to the Board of Commissioners of the borough.

Abbott publicly stated on various occasions between February 4th, 1947, and the date of election that the concessions held by Anschelewitz were under a three year lease for the period from 1945 through 1947 and justified their terms as drawn under wartime conditions.

On April 24th, 1947, Howard Hayes, a candidate for commissioner, sought to inspect the borough records but was denied access thereto by the acting borough clerk on Abbott's orders until after the election on May 13th. A few days later Hayes applied to a Supreme Court Justice for an order directing Abbott to allow him to inspect the municipal records, whereupon Abbott agreed to show him the desired books. The following day Hayes and another inspected the minute books of the borough with special care and made a minute examination from January 1st, 1947, for resolutions on leases but could find none authorizing the 1947 Anschelewitz lease. He asked to see all the borough leases but the 1945 Anschelewitz lease and not the 1947 was shown to him.

A new Board of Commissioners was elected to take office on May 20th. On the latter date Helen Edwards, the acting borough clerk, for the first time produced the 1947 Anschelewitz lease from her files and turned it over to Peter MacLearie, the new Mayor, and now claims she misplaced it and only came across it while clearing her files in preparation of the assumption of duties by the new borough clerk.

The new Commissioners refused to recognize the 1947 lease, accepted payment under the old only and on March 9th, 1948, passed the resolution authorizing and directing the borough clerk to advertise for bids for the concessions concerned. The bids submitted pursuant to the advertising were more for one year than the total rent for four years under the 1947 lease.

The question is presented whether or not the Anschelewitz lease of 1947 was invalid for not being made after public advertising for bids. There are several apparently contradictory statutes on the necessity of advertising for public bidding prior to leasing. R. S. 40:60–42 and R. S. 40:61–1(g), both part of the Home Rule Act of 1917, authorize leasing without advertising for public bidding. The former provides as follows:

"Every municipality may lease for fixed and limited terms to any person any land or building of the municipality not presently needed for public use. If any portion of a building owned by a municipality is not presently needed for the use

of the municipality, the governing body may rent such portion for private purposes to the person who will pay the highest rent therefor, for any use not detrimental to such building or the use of the remainder by the municipality."

R. S. 40:61–1(g) limits such leases to five years in the following words:

"*General powers; acquisition of property.* The governing body of any municipality may:

\* \* \* \* \* \* \*

"*Lease of public places.* g. Lease, for any term not exceeding five years, any part of any public resort and recreation place owned by the municipality and any building thereon, or part thereof, not presently needed for such use; \* \* \*."

Two other statutes which require advertising for bids prior to leasing are R. S. 40:61–1(h), also a portion of the Home Rule Act of 1917, and R. S. 40:61–36 to 41, the source of which is a 1937 act. The former permits municipalities to lease beachfront concessions to the highest responsible bidder after advertising for bids. The latter permits the governing body of a municipality bordering on the Atlantic Ocean to let waterfront facilities owned by it and not needed for the municipality's use to the highest responsible bidder after advertising for bids. R. S. 40:61–41 specifically provides the power conferred by R. S. 40:61–36 to 40 is in addition to those given by any other law or laws.

This case is within the principle enunciated in *Whirl-O-Ball, Inc.,* v. *Asbury Park,* 136 *N. J. L.* 316. There the Court of Errors and Appeals held R. S. 40:61–36, *et seq.,* conferred additional powers and was not to be construed as overruling other statutes allowing lettings without advertising. Here also, the statutory authorizations for lettings without advertising are applicable and are to be construed as conferring additional powers on the borough.

The question next presented is whether a resolution was ever adopted authorizing the Anschelewitz lease of 1947. Besides the minutes of the borough, there is the testimony of Helen Edwards, the acting borough clerk, Mayor Abbott, Commissioner Lyman and Leon Anschelewitz, all of whom stated that on February 4th, 1947, at a public meeting of the

borough Commissioners, a resolution was passed before adjournment authorizing the 1947 lease.

The respondent contends that no resolution authorizing that lease was ever adopted. In support thereof Grace Barrett, a reporter for the *Coast Advertiser*, a weekly newspaper circulating in Belmar, and Sam Schraeger, a reporter for the *Asbury Park Press*, both testified that pursuant to duties with their newspapers they attended the meeting of the Board of Commissioners of Belmar on February 4th, 1947, the date on which the authorizing resolution is alleged to have been passed, were present from the opening until adjournment and heard no resolution adopted by the board awarding a lease to Anschelewitz. Their subsequent published accounts of the meeting contained no reference to any such resolution or lease. In the article of the *Coast Advertiser* mention is specifically made that Anschelewitz spoke briefly at the meeting on February 4th, 1947, commending the board on its budget, yet passage of the resolution awarding him a lease is not mentioned. Both reporters attended the subsequent meeting on February 11th, 1947, at which the minutes for the preceding meeting were read and approved, and again they heard no reference to the resolution and their articles covering that meeting again made no report of any such action.

It is agreed the approval of such a resolution would have been important news because the validity of leases of another municipality made without advertising for bids was being questioned in court. Mrs. Barrett had at various occasions asked Mayor Abbott, both before and after February 4th, 1947, about the concession leases but had not received a definite answer.

In addition to the impartial testimony of the two reporters, there is the refusal of Mayor Abbott to allow Hayes to inspect the municipal records except after application for a court order, and the testimony of the latter that no such resolution appeared in the minutes. The fact that the Anschelewitz lease of 1947 did not appear until May 20th, after election, is manifestly important. The explanation by the Mayor that he did not know where it was placed after signing and the testimony of the acting clerk that she filed it in her desk and

forgot about it are hardly believable in view of the hotly contested elections created by the very issue engendered by such leases. It is also significant that after the execution of the 1947 lease Mayor Abbott and Lyman stated publicly, orally and through the press, that Anschelewitz held possession of the concessions in question under the lease of 1945 and concealed the fact of the new lease.

The resolution itself of February 4th, 1947, does not conform with the events even as described by prosecutor's witnesses. It purports to authorize the borough solicitor to enter into a lease with Anschelewitz although the lease was actually signed on that date without the borough solicitor's action.

It seems implausible that had the resolution actually been openly approved at a borough meeting at which there was public attendance, the matter would have remained so completely unknown to the public and to the opposing candidates at a time when it was of particular interest and importance. The conclusion is inescapable that the resolution of February 4th, 1947, awarding the lease was not publicly and legally adopted and therefore of no force and effect.

In reaching this conclusion we are not acting contrary to that line of decisions barring collateral attacks upon ordinances or resolutions enacted pursuant to statutory authorization, *First National Bank of Fort Lee* v. *Englewood Cliffs,* 123 *N. J. L.* 590; *Montefiore Cemetery Co.* v. *Newark,* 3 *N. J. Mis. R.* 1100, since in these cases the fact of passage of the resolution was not disputed.

Nor are we barred from looking to evidence concerning the approval of the resolution beyond the minute book of the municipality. The rule stated in *Campbell* v. *Hackensack,* 115 *N. J. L.* 209, disallowing the introduction of extrinsic evidence to alter or supplement the written record of a municipality was not intended to exclude evidence disproving the authenticity of a record, 22 *C. J., Evidence,* § 1618, nor to allow the perpetration of a fraud. 22 *C. J., Evidence,* §§ 1621 to 1623. The court may always look to evidence establishing fraud, bad faith or the abuse of discretion by municipal governing bodies resulting in the injury or oppression of the citizen. *McGovern* v. *Board of Public Works,* 57 *N. J. L.*

580; *Carling* v. *Jersey City*, 71 *Id.* 154; *Montefiore Cemetery Co.* v. *Newark, supra; Con Realty Co.* v. *Ellenstein,* 125 *Id.* 196; *Travis* v. *Highlands,* 136 *Id.* 199.

No resolution having been passed approving the lease of 1947 and there being no statute or ordinance conferring general power, the Mayor was without authority to execute the lease in question. While the lease was within the power of the municipality, it was entered into with an unauthorized agent, and in the absence of ratification, the public corporation is not bound by its terms. *Giardini* v. *Dover,* 101 *N. J. L.* 444; *Potter* v. *Metuchen,* 108 *Id.* 447. All action in approving sublessees occurred during the period of the 1945 lease and the borough's acceptance of rentals from Auschelewitz was only in accord with obligations under that lease. His offers to pay additional rent as provided under the 1947 lease were specifically rejected.

The writ is dismissed, with costs.