CLARENCE J. SCHEEL, appellee, v. SUPERIOR MANUFACTURING
COMPANY and BITUMINOUS CASUALTY CORPORATION, appellants.

No. 49361.

(Reported in 89 N.W.2d 377)

874

Aprıl 9, 1958.

Kopf & Christiansen, of Davenport, for appellants.

McDonald & McCracken, of Davenport, for appellee.

GARFIELD, J.—The question presented is whether an application for commutation of workmen's compensation payments filed with the industrial commissioner, together with his approval thereof and order for lump sum payment, should be set aside as fraudulently procured by the employer's compensation insurance carrier. Following trial the district court granted such relief.

The facts are virtually undisputed. March 24, 1955, plaintiff, Clarence J. Scheel, sustained a personal injury arising out of and in the course of his employment by defendant Superior Manufacturing Company. Two fingers on his left hand were partially amputated. He was laid up and paid workmen's compensation by Superior's compensation insurance carrier, defend-

ant Bituminous Casualty Corporation, until April 18 when he returned to work. However his hand was still bandaged and there was infection in it. This condition continued until the papers herein sought to be set aside were signed and filed with the industrial commissioner and for some time thereafter.

April 25 (1955) an adjuster for the casualty company, without request from plaintiff and apparently without prior discussion or arrangement, presented to plaintiff a prepared application for commutation of payments and asked him to sign it. The adjuster said the papers were for having his fingers off. Plaintiff hesitated to do as requested and asked the adjuster, Mr. James W. Ruefer, "What if something else sets in?" to which Ruefer replied " 'Oh we'll take care of that.' " The purpose stated in the application in support thereof was "to pay bills." Plaintiff insists he did not need a lump sum settlement to pay bills and said nothing to the adjuster to warrant the written statement to that effect.

Aside from plaintiff and Ruefer there were three witnesses to the transaction just referred to. Mr. Wm. C. Belser testifies that before plaintiff signed the application he asked, " 'If I have any trouble with my fingers what'll happen?' " to which Ruefer replied " 'It'll be taken care of.' " Witness Raymond R. Myers says plaintiff held up his hand and asked, " 'What if something comes on? You know I've got infection in them' ", and Ruefer replied " 'I'll take care of it. This is just for your compensation check.' " Also that plaintiff said nothing about having some bills to pay.

The third witness to the transaction aside from plaintiff and Ruefer was Mr. Richard L. Wolffe, president of defendant manufacturing company. He testifies he thinks Mr. Ruefer asked plaintiff to sign the papers so he could bring him a check for loss of his fingers, plaintiff said to Ruefer, " 'My fingers still have infection in them' ", Ruefer replied that this settlement was merely for loss of the fingers, if anything came out of the infection in the fingers the casualty company would take care of the medical expenses, plaintiff said nothing about needing the money in a lump sum to pay bills, before plaintiff signed the papers he asked the witness if he should do so and Wolffe replied "I don't know."

Mr. Ruefer, defendants' only witness, says he asked plaintiff to read and sign the papers, plaintiff held up his bandaged hand and said, " 'I still have some infection in these two fingers and I'll have to go to a doctor for it' ", the witness told him to go to the doctor for the infection in his fingers and "we'd take care of it", plaintiff then signed the papers. On cross-examination Mr. Ruefer admitted he supposed "there's that probability" infection in any part of the body may spread to any other part, the commutation agreement says nothing about the medical expense but tells about paying plaintiff 50% loss of the fingers, he did not tell plaintiff the commutation agreement was a full and final disposition of his compensation claim, "I explained to plaintiff he was being paid for the 50% loss of two fingers and that's what the $718.73 was for. Further I explained nothing."

The fair inference is the casualty company sent the industrial commissioner the application for commutation, containing a form for his approval and order for lump sum settlement, together with acceptance of service, waiver of presentation to the district court and consent that the commissioner may pass upon it, all signed by both defendants. See section 85.46, Code, 1954.

The deputy industrial commissioner who approved the application on April 29 testifies he then had no information plaintiff still had an active infection in his fingers and if he had known this he could not legally approve the application, also that if he had reason to believe plaintiff did not need the money to pay bills he would have made further inquiry before signing the approval. Evidently this testimony is largely based upon the witness's interpretation of Code section 85.45, hereinafter referred to.

May 3 the casualty company issued to plaintiff its check for $718.73 which, with the few weekly benefits previously paid (about $800 in all), he admits is the correct compensation on a lump sum basis for 50% loss of use of the two fingers. Plaintiff cashed the check and has never offered to restore any part of the proceeds.

In the meantime, on May 1, plaintiff was taken to a Davenport hospital for three weeks for terrific headaches and the infection in his fingers. Before that he stayed home from his

work three or four days for the same reason. From the Davenport hospital plaintiff was taken to a hospital in Iowa City for two weeks for the same difficulty. After he returned to his home he was again in the Davenport hospital a total of nine days because of the same trouble.

When the casualty company was called upon to pay the medical expense incurred for the treatment just referred to it disclaimed responsibility therefor and refused to pay any additional amount evidently on the ground the application for commutation, when approved by the deputy commissioner and lump sum payment ordered, released it from all liability. This action was brought August 8, 1956.

I. Section 85.45, Code, 1954, previously mentioned, provides:

"Commutation. Future payments of compensation may be commuted to a present worth lump sum payment on the following conditions:

"1. When the period during which compensation is payable can be definitely determined.

"2. When the written approval of such commutation by the industrial commissioner has been filed in the proceedings to commute.

"3. When it shall be shown to the satisfaction of the court or a judge thereof that such commutation will be for the best interest of the person or persons entitled to the compensation, or that periodical payments as compared with a lump sum payment will entail undue expense, hardship, or inconvenience upon the employer liable therefor."

Section 85.46 states that a petition for commutation may be made to the district court or judge and shall have indorsed thereon the approval of the commissioner. Notice of the petition shall be served upon the opposite party in the manner required for original notices. The court or judge shall hear and determine the matter as a proceeding in equity and render such decree, granting or denying the commutation, as equity will warrant on the facts presented. The parties may waive presenting the petition to the court and, if this is done, governed by the law applicable to the court, the commissioner may order the commu-

tation, with the same force and effect as if done by the court. This is the procedure followed here.

Section 85.47 provides that when commutation is ordered, upon payment of the required amount, "the employer shall be discharged from all further liability on account of such injury or death, and be entitled to a duly executed release, upon filing which the liability of such employer * * * shall be discharged of record."

It should be kept in mind the approval of the commissioner is a necessary condition to any valid petition or order for commutation. (The petition here was designated "application.") See in this connection Code section 85.18. Other such conditions are that "the period during which compensation is payable can be definitely determined" and, as applied to the facts here, a showing to the satisfaction of the court or judge, or of the commissioner where court approval is waived, that the commutation will be for the best interest of the person entitled to compensation. There has been no suggestion here that periodic payments as compared with a lump sum payment would "entail undue expense, hardship, or inconvenience upon the employer."

The deputy commissioner who approved this commutation testifies no one could definitely determine the period during which compensation is payable where, as here, there was an active infection in the injured hand. Evidently the commissioner's interpretation of 85.45 is that the law does not permit approval of a commutation where the injured part of the body is still actively infected. This interpretation, although not binding upon us, is entitled to our respectful consideration. See in this connection Lever Brothers Co. v. Erbe, 249 Iowa 454, 470, 87 N.W.2d 469, 479, 480. We think it is a reasonable construction of the statute and concur in it.

It may be well to observe that section 86.34, providing for review of an award or agreement for settlement and, if "the commissioner finds the condition of the employee warrants such action, he may end, diminish, or increase the compensation" applies, according to its terms, only "where the amount has not been commuted." This section is the one under which the injured employee proceeded in Bousfield v. Sisters of Mercy, 249 Iowa 64, 86 N.W.2d 109; Rose v. John Deere Ottumwa Works, 247

Iowa 900, 76 N.W.2d 756; Stice v. Consolidated Indiana Coal Co., 228 Iowa 1031, 291 N.W. 452, and Oldham v. Scofield & Welch, 222 Iowa 764, 266 N.W. 480, 269 N.W. 925.

II. The issue of jurisdiction presented in Travelers Insurance Co. v. Sneddon, 249 Iowa 393, 86 N.W.2d 870, is not involved here. That is quite a different case. A court of equity clearly has jurisdiction of the subject matter of such a suit as this. Doyle v. Dugan, 229 Iowa 724, 729–32, 295 N.W. 128, 131, 132, and citations; Foote v. State Savings Bank, 201 Iowa 174, 178, 206 N.W. 819, and citations; Rathbun v. Baumel, 196 Iowa 1233, 1243, 191 N.W. 297, 30 A. L. R. 216. There is no suggestion to the contrary nor is it suggested any other remedy was available to plaintiff.

III. Defendants have presented their appeal much as if this were a law action. The first two errors assigned relate to what they refer to as admission of evidence over their objection. The trial court properly followed the usual equity procedure of receiving testimony over objection of opposing counsel so our review might be de novo as required by rule 334, Rules of Civil Procedure. We will consider only evidence to which defendants did not interpose valid objection.

We think the testimony that plaintiff did not need a lump sum payment in order "to pay bills", as the application recites, and did not so inform the casualty company's adjuster does not, as defendants assert, violate the parol-evidence rule. Parol evidence is admissible to prove fraud that induced the writing. Bales v. Massey, 241 Iowa 1084, 1090, 1091, 43 N.W.2d 671, 674, and citations; Schipfer v. Stone, 206 Iowa 328, 330, 218 N.W. 568, 219 N.W. 933; Joseph v. Mangos, 192 Iowa 729, 731, 732, 185 N.W. 464; Aronovitch v. Levy, 238 Minn. 237, 56 N.W.2d 570, 576, 34 A. L. R.2d 1306; 32 C. J. S., Evidence, section 979a; 24 Am. Jur., Fraud and Deceit, section 267. Here it is charged the application and its approval were procured by fraud practiced upon both plaintiff and the commissioner.

We think too the testimony above referred to of the deputy commissioner, that he had no information plaintiff's fingers were still infected and would not have approved the commutation if he had known the facts, was proper in view of the claim of fraud practiced upon him. In re Estate of Zachary,

165 Iowa 309, 319, 320, 145 N.W. 883; State ex rel. McCrate v. Rhodes, 349 Mo. 1071, 163 S.W.2d 978, 980; Anschelewitz v. Borough of Belmar, 137 N. J. L. 617, 61 A.2d 293, 296; 32 C. J. S., Evidence, section 979a, page 947.

IV. The legal principles that govern this case appear to be those so frequently applied where relief from a judgment is sought on the ground it was procured by fraud. Doyle v. Dugan, supra, 229 Iowa 724, 730, 731, 295 N.W. 128, 131. The approval of the commutation and order for lump sum payment, like a judgment, are final and conclusive in the absence of fraud or some other equitable ground for disturbing them. Tischer v. Council Bluffs, 231 Iowa 1134, 1150, 3 N.W.2d 166, 174. See also Sheker v. Quealy, 232 Iowa 429, 4 N.W.2d 250; Annotation, 165 A. L. R. 9, 37, 38. Secrest v. Galloway Co., 239 Iowa 168, 174–176, 30 N.W.2d 793, 797, disapproves part of the Tischer opinion not here pertinent.

Rule 252(b), Rules of Civil Procedure, provides the court may vacate a judgment or grant a new trial for fraud practiced in obtaining the judgment. Rule 253 states a petition for such relief must be filed in the original action within a year after rendition of the judgment. So far as applicable here these rules are a substantial re-enactment of sections 12787 to 12790, Code, 1939. We have repeatedly held that where, in the exercise of reasonable diligence, the fraud is not discovered within the year, relief because thereof may be had in equity. Shaw v. Addison, 236 Iowa 720, 729, 18 N.W.2d 796, 801, and citations; Doyle v. Dugan, supra, 229 Iowa 724, 731, 295 N.W. 128, 130, 131, and citations. We have also held a petition in equity for relief from a judgment on the ground of fraud may be treated as one for a new trial under section 12787 or the later rule 252. Atkin v. Westfall, 235 Iowa 618, 625, 17 N.W.2d 532, 535, and citation. This is also the effect of rule 67, R. C. P.

Here there was no original court action in which the petition might be filed. And, as explained, review by the commissioner under section 86.34 lies only where the amount of compensation has not been commuted. It might be argued the only commutation here was of compensation for partial loss of plaintiff's fingers, not for disability resulting from the infection that fol-

lowed. However, since it is not argued we do not pursue the point. It is not contended this action was not commenced within proper time. We have no doubt, under many decisions cited herein, plaintiff pursued the right course in seeking the relief he asks.

 █ It is not every case of fraud in obtaining a judgment that will justify relief therefrom. The time-honored rule is that the fraud must be extrinsic or collateral to the matter first tried, and not fraud in a matter on which the judgment was rendered. There seems to have been a tendency to relax or enlarge the rule somewhat in the interest of justice. "Extrinsic or collateral fraud * * * may consist of acts or promises lulling the defrauded party into false security, or preventing him from making defense, and many other acts [citation]." Tollefson v. Tollefson, 137 Iowa 151, 154, 114 N.W. 631, 632; Doyle v. Dugan, supra, at page 731 of 229 Iowa, page 131 of 295 N.W.

The leading precedent in the country on what is extrinsic fraud is United States v. Throckmorton, 98 U. S. 61, 65, 66, 25 L. Ed. 93, 95. We have approved it many times and quoted therefrom. Tucker v. Stewart, 121 Iowa 714, 716, 97 N.W. 148, says the Throckmorton rule is "uniformly followed in this state, though applied without generalization to the facts of each case." (Citations)

The Throckmorton opinion states there is an exception to the general rule of finality of judgments where, by reason of something done by the successful party, there was in fact no adversary trial or decision of the issue in the case. "Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by * * * a false promise of a compromise * * * and similar cases which show that there has never been a real contest in the trial or hearing", the judgment may be set aside. (Pages 65, 66, of 98 U. S., page 95 of 25 L. Ed.)

Perhaps the leading Iowa decisions that explain this rule of extrinsic fraud, in addition to those already cited, are Graves v. Graves, 132 Iowa 199, 109 N.W. 707, 10 L. R. A., N. S., 216, 10 Ann. Cas. 1104; Wood v. Wood (Ladd, J.), 136 Iowa 128, 113 N.W. 492, 12 L. R. A., N. S., 891, 125 Am. St. Rep. 223; Reimers v. McElree, 238 Iowa 791, 796, 797, 28 N.W.2d 569,

572. A decree was held properly set aside in Frisbie v. Chase, 161 Iowa 133, 140 N.W. 842, because it was procured by artifice amounting "to a legal fraud."

There is an annotation in 88 A. L. R. 1201 on the criterion of extrinsic fraud as used in this connection.

30A Am. Jur. (1958), Judgments, sections 791 to 808, discusses the question under consideration. We quote some general statements therefrom. Section 791 says: "It has been said that all deceitful practices in depriving or endeavoring to deprive another of his known rights by means of some artful device or plan contrary to the plain rules of common honesty constitute fraud sufficient to warrant interference with a judgment by a court of equity. It matters little how the fraud is effected; a court looks to the effect, and asks if the result is a consequence of fraud." Idem, section 804, states: "Concealment of material facts for the purpose of securing a judgment may amount to a fraud warranting interference by a court of equity." And section 807 says: "Indeed, one of the most frequently recurring forms of fraud on the part of one litigant against the other, entitling the latter to relief in equity against the judgment finally entered, is the making of some agreement for the purpose of preventing an appearance or defense in the original action, reliance upon which has the effect intended."

49 C. J. S., Judgments, section 372a, states: "A court of equity * * * will relieve against * * * a judgment obtained by means of fraud, and especially where the fraud has been imposed or practiced on the court. * * * Equitable relief may be had on the ground of fraud in inducing the court to assume jurisdiction which it did not have or would not otherwise have exercised."

The deputy commissioner here performed the function of the district court.

Idem, section 372b, says: "* * * in the final analysis each case must be judged on its own facts in determining whether the circumstances amount to fraud so as to justify equitable relief against a judgment. Broadly speaking, if the result complained of is a consequence of fraud, the mode or manner in which the fraud was effected is immaterial."

State v. Vincent, 152 Ore. 205, 209, 52 P.2d 203, 205, states: "It seems to be generally held that the fraudulent concealment

of facts, which would have caused the judgment or decree not to have been rendered, will constitute extrinsic fraud * * *."

See also Laun v. Kipp, 155 Wis. 347, 145 N.W. 183, 5 A. L. R. 655, 670.

■■ ■■ To warrant setting aside a judgment because of extrinsic fraud it must be clearly shown. In re Estate of Pierce, 245 Iowa 22, 33, 60 N.W.2d 894, 901, and citations. See also 30A Am. Jur., Judgments, section 841. In determining this question we give weight to the trial court's findings. Nelson v. Nelson, 249 Iowa 638, 639, 87 N.W.2d 767, 768, and citation. After doing so we are not inclined to reach a different conclusion.

■■ Of course plaintiff is not entitled to relief here merely because the casualty company did not keep its promise to take care of the medical expense resulting from the infection in his fingers. However, if the promise was made without intention of performance and for the purpose of inducing action the misrepresentation was of an existing fact, not merely a promise of future conduct. Many Iowa decisions and the weight of authority generally support this conclusion. Bruner v. Myers, 212 Iowa 308, 312, 233 N.W. 505, 506, 235 N.W. 726, and citations; Commercial Savings Bank v. Kietges, 206 Iowa 90, 97, 98, 219 N.W. 44; Faust v. Parker, 204 Iowa 297, 304, 305, 213 N.W. 794, and citations; Palmetto Bank & Trust Co. v. Grimsley, 134 S. C. 493, 133 S.E. 437, 51 A. L. R. 42, and annotation, 46, 63 to 69; Annotations, 68 A. L. R. 635, 637; 91 A. L. R. 1295, 1297, 1298; 37 C. J. S., Fraud, section 12.

That this promise was made and as an inducement for plaintiff to sign the application is clearly shown. We think too the finding is warranted the promise was made without intention of the casualty company to perform it. The promise had the desired effect of lulling plaintiff into a false sense of security and induced him to consent to the commutation.

Another inducement was the false representation of the adjuster that the application, in effect, related merely to commutation of compensation for partial loss of the fingers, not for any disability resulting from infection. The casualty company, however, evidently intended throughout to use the application, if approved, as a bar to any further claim for compensation for this injury. Plaintiff and the adjuster did not stand upon equal

footing. Plaintiff was not aware of his rights while the adjuster knew the commutation, if approved, and payment of the commuted amount would discharge the employer from remaining liability on account of the injury.

Further, the casualty company obtained the commissioner's approval by concealing from him the vital fact, unknown to him but known to it, that plaintiff's fingers were still infected. This fact, if revealed to the commissioner, would have deprived him of power to approve the commutation. It was the insurer's duty to reveal this fact to the commissioner and its concealment was a fraud upon him. The false statement in the application that the money was needed to pay bills was a further inducement to the commissioner to act.

It is clear that because of these matters plaintiff was deprived of his rights, the commissioner was induced to exercise jurisdiction he would not otherwise have exercised, and there was never any real trial or hearing upon the question of commutation. We are content to hold, in view of all the facts, the commissioner's approval was obtained by the casualty company's extrinsic fraud practiced upon plaintiff and the commissioner. And, as we understand, the casualty company is claiming a discharge from all liability to plaintiff because of paying the commuted amount of compensation due only for partial loss of the fingers. To permit the commissioner's order and payment of this sum to be interposed as a bar to any compensation due plaintiff because of the infection in his fingers would be most unjust. A court of equity is not powerless to prevent such injustice.

Decisions that support our conclusion with brief comment thereon include:

Kirby v. Holman, 238 Iowa 355, 374, 25 N.W.2d 664, 674 (False affidavit filed regarding military service of a defendant).

Doyle v. Dugan, supra, 229 Iowa 724, 731-3, 295 N.W. 128, 132 (Closely in point. Representatives of employer falsely informed injured workman and his parents their insurance company would take care of everything although employer had not insured its liability).

Rock Island Plow Co. v. Brunkan, 215 Iowa 1264, 248 N.W.

32 (Fraudulent concealment of facts by means of which defendant was induced to default and plaintiff enabled to obtain judgment without encountering defense).

Foote v. State Savings Bank, 201 Iowa 174, 206 N.W. 819 (Plaintiff judgment holder assured defendant it would not look to him for payment of note and he could disregard notice of action).

Dennis v. Harris, 179 Iowa 121, 153 N.W. 343 (Divorce set aside because suit was instigated by duress and deceit of husband, bent on marrying another woman).

In re Estate of Zachary, supra, 165 Iowa 309, 319–322, 145 N.W. 883 (Judgment denying probate of will obtained by concealing from court agreement among adult heirs for purpose of defeating will. "That fact the trial judge had the right to know, and, while it * * * would have been investigated by him, had there been anything to suggest that such an agreement had been entered into, yet it was not one inherent in the cause of action, but was a means adopted for procuring the judgment. In such instances the judgment is subject to attack." Page 320 of 165 Iowa, page 887 of 145 N.W.).

Griffith v. Merchant's Life Assn., 148 Iowa 727, 728, 127 N.W. 1079 (Plaintiff was deceived into not pleading and proving facts, thereby resulting in miscarriage of justice. "Such fraud is extrinsic, and a judgment procured thereby may * * * be set aside.").

Kwentsky v. Sirovy, 142 Iowa 385, 392, 121 N.W. 27, 30 ("But, if the fraud * * * is practiced in the very act of obtaining * * * the judgment," it "may be collaterally attacked.").

Tollefson v. Tollefson, supra, 137 Iowa 151, 114 N.W. 631 (Plaintiff sent his wife to Europe with the assurance he would join her there and later procured a divorce by the false representation she had deserted him. Held, the fraud was extrinsic.).

V. There is no merit to defendants' argument that if fraud was practiced upon the commissioner plaintiff was an active participant therein and is therefore estopped to maintain the action. Basis for the argument is the statement in the application verified by plaintiff that he, in effect, needed the compensation in a lump sum to pay bills, which he insists was untrue. If, as we hold, plaintiff was induced to sign the application by

the insurer's fraud he is not himself chargeable with fraud in so doing. Any participation by him in fraud upon the commissioner was induced by the insurer's fraud upon plaintiff.

In this respect the situation here is like Dennis v. Harris, supra, 179 Iowa 121, 153 N.W. 343, where the wife was induced by duress and deceit of her husband to procure a divorce. She was not chargeable with fraud upon the court. See also as somewhat analogous Wallace v. Spray, 248 Iowa 100, 107, 108, 78 N.W.2d 406, 410, 411, which denied the claim plaintiff was estopped by his failure to read the agreement from obtaining relief on the ground of mutual mistake. The opinion concludes, "Equity will not countenance that which in effect would amount to a legal fraud."

Robson v. Kramer, 215 Iowa 973, 245 N.W. 341, cited by defendants, and the decisions which follow it bear no fair analogy to the present controversy. In the cited case the husband was the instigator of an action brought by his wife resulting in a divorce through fraud practiced upon the court which induced it to assume jurisdiction. We held the husband was estopped to question the decree.

VI. There are two answers to defendants' remaining contention that relief should be denied because plaintiff failed to tender into court the money he received from the casualty company. In the first place the rule prevails in Iowa and several other jurisdictions that where a release or compromise of a claim for personal injury is obtained through fraud a return or tender of the money paid therefor is not a necessary condition precedent to its voidance. An offer to credit the sum received upon the total amount ultimately allowed is sufficient.

Iowa decisions to this effect are cited in annotation, 134 A. L. R. 6, 41, and analyzed at pages 44 to 46. See Wangen v. Upper Iowa Power Co., 185 Iowa 110, 113, 114, 169 N.W. 668, and citations; Seymour v. Chicago & N. W. R. Co., 181 Iowa 218, 236, 164 N.W. 352; O'Brien v. Chicago, M. & St. P. R. Co., 89 Iowa 644, 655–7, 57 N.W. 425, and citations. Defendants concede this is the rule but argue proof of fraud is insufficient— an argument we have rejected.

The second answer and probably the better one, closely related to the first or perhaps inhering therein, is that plaintiff

888

is entitled in any event to retain the money he received. Dennis v. Harris, supra, 179 Iowa 121, 143, 144, 153 N.W. 343; O'Brien v. Chicago, M. & St. P. R. Co., supra, last above; Corcoran v. Waugh, 368 Ill. 318, 13 N.E.2d 961, 964; Annotation, 134 A. L. R. 6, 13, 14, 98 to 100; 12 C. J. S., Cancellation of Instruments, section 44b(3), page 1007.

In our opinion defendants are not entitled to assert the commutation proceedings and payment of the commuted amount as a discharge from all liability to plaintiff because of his injury. They should have credit for all sums paid plaintiff upon the total amount the commissioner may hold him entitled to. This we understand is the effect of the trial court's decree.— Affirmed.

All JUSTICES concur except SMITH, J., not sitting.