JACK HARRISON, appellant, v. RAY KELLER and UNITED STATES FIDELITY & GUARANTY COMPANY, appellee.

No. 50625.

(Reported in 117 N.W.2d 477)

OCTOBER 16, 1962.

Steward, Crouch & Hopkins, of Des Moines, for appellant.

John Paul Jones and W. C. Hoffmann, both of Des Moines, for appellees.

HAYS, J.—Plaintiff, age 55 at the time in question, was employed by defendant Keller as a painter. Defendant United States Fidelity & Guaranty Company was Keller's compensation insurance carrier. In September 1955 he fell from a scaffold and sustained head and back injuries. It is conceded that such injuries arose out of and in course of his employment. He was hospitalized for a week and was examined by Dr. Marvin H. Dubansky, who found a nerve injury probably the result of the fall. Plaintiff, who had formerly lived in Arkansas before coming to Des Moines, returned to Arkansas. His condition was such he could not work and after some delays the insurance carrier started paying weekly compensation. His condition grew worse and he returned to Des Moines where he was again examined by Doctor Dubansky. He was referred to Dr. Henry Decker, a neurosurgeon. Both doctors expressed the opinion that he had amyotrophic lateral sclerosis, which is a progressive ailment resulting in permanent total disability and usually fatal within a few years. They also expressed doubt as to such ailment being attributable to the fall.

In May 1956 the carrier wrote to plaintiff, at his home in Arkansas, that his ailment was not attributable to the fall; that it was terminating further compensation payments as of May 10, 1956, and enclosed "final papers" for his signature. The papers were not signed. Soon thereafter plaintiff returned to Des Moines, and contacted a Mr. Robert H. Schultz, the carrier's representative in Iowa. All parties agree that plaintiff wanted

further compensation payments. It also appears that plaintiff was advised of the serious nature of his ailment. In the conversation with Mr. Schultz, plaintiff asked what he could do about the matter. Schultz told him he had several things he could do: (1) If not satisfied with the settlement or disability placed upon his injury, he could arbitrate it by a trial before the State Industrial Commission and would have to employ a lawyer; (2) special case settlement in which the carrier would deny there had been an injury and compromise payment of a lump sum would be offered. An attorney would be required to represent him; (3) commutation, by which a certain percent of disability connected with his injury would be certified by a doctor and on this basis a lump sum settlement would be approved by the commission; that such a course, if approved, would cut off all future claims as to his injury. No mention was made as to the need for counsel and no counsel was employed by plaintiff at the time he agreed to commutation.

At Mr. Schultz's request Doctor Decker made a report that "It would be my opinion that total disability of 25% would be a very fair settlement in view of the circumstances surrounding Mr. Harrison's state." This statement by Doctor Decker, together with a statement as to why a commutation would be for plaintiff's best interest, was attached to an application for commutation and filed with the commissioner. This was returned for proper signatures and a request for a report of injury and memorandum of agreement, which had not previously been filed with the commissioner, and all medical reports. A report of injury, a memorandum of agreement and two reports by Doctor Decker were then filed. Thereafter, the commissioner approved the commutation authorizing the carrier to a final release upon payment of a lump sum, equivalent to weekly payments for a total disability of 25%.

As plaintiff's condition grew worse, counsel was employed and this action was commenced in June 1959. The basis thereof is alleged fraud and deceit practiced upon plaintiff and upon the commissioner. As before stated, the trial court dismissed the petition, thus this appeal.

I. Section 85.45, Code of 1954, provides: "Future pay-

ments of compensation may be commuted to a present worth lump sum payment on the following conditions:

"1. When the period during which compensation is payable can be definitely determined.

"2. When the written approval * * * by the industrial commissioner has been filed * * *.

"3. When it shall be shown * * * such commutation will be for the best interest of the person * * * entitled to the compensation, * * *." See also sections 85.46, 85.4.

Section 85.55 provides: "No employee * * * to whom this chapter applies, shall have power to waive any of the provisions of this chapter in regard to the amount of compensation which may be payable to such employee * * *."

 It is the well established rule in this state that the compensation law is for the benefit of the workingman and should be liberally construed to that end. Tucker v. Nason, 249 Iowa 496, 87 N.W.2d 547; Bulman v. Sanitary Farm Dairies, 247 Iowa 488, 73 N.W.2d 27. There is no doubt but that cases such as the instant one are cognizable in a court of equity and the rule pertaining to fraud and sufficiency of proof thereof is likewise applicable. It is stated in 49 C. J. S., Judgments, section 372, that equity will relieve against a judgment obtained by extrinsic fraud, especially where the fraud has been imposed on the court. Scheel v. Superior Mfg. Co., 249 Iowa 873, 89 N.W.2d 377, and authorities cited therein. Under section 85.46 the commissioner stood in the position of a court.

 We think an examination of the record shows a fraud by the insurance carrier, both as to plaintiff and the commissioner. Throughout the entire proceedings leading up to and including the signing of the commutation the carrier undertook to advise and direct plaintiff's procedure. All examinations were made by doctors, who, whether or not specially employed by the carrier, were paid by it. In discontinuing payments of weekly compensation in May 1956, it was anticipated by the carrier that such action would cause plaintiff to seek some sort of a settlement, which it did, according to the testimony of Mr. Schultz. Plaintiff after being told by Mr. Schultz of different methods available to settle the controversy, all of which would require the

employment of counsel by plaintiff, except commutation, accepted such statements and agreed upon a commutation. We think the record fairly shows that the carrier was anxious to avoid a total permanent disability liability by a compromise, even though it knew a commutation as a compromise settlement of a disputed claim would not be approved by the commissioner. The carrier, having assumed the position as adviser to plaintiff, was duty bound to make full disclosure to him. This was not done.

However, a more flagrant deception we think was perpetrated upon the commissioner. The carrier in submitting the application to him for a commutation sought to, and did, convey to him the idea that the period during which compensation is payable was definitely determined to be a 25% total disability. Nowhere in the record is there testimony of any evaluation or determination of this question. In fact it is quite the contrary and the 25% figure given to the carrier by Doctor Decker was nothing more than a statement of what in his judgment would be a fair compromise settlement. Also, in response to the commissioner's request for all medical reports, only two, made by Doctor Decker, were filed, although it appears many other reports by various doctors were received by the carrier.

It is true that the application to commute stated the nature of plaintiff's ailment and any investigation by the commissioner would reveal such to be a progressive one. However, lacking such investigation, the application was intended to present to the commissioner the idea the injury was one for which the time of payments of compensation was definitely determined upon a basis of 25% total disability. It is clear that the commissioner accepted and construed it as was intended he should. While perhaps the commissioner was at fault for not fully acquainting himself with the nature of the ailment, i.e., that it was progressive, it appears to be the policy of the commissioner that when an employee signs his name to a commutation there is little further inquiry made.

While it is claimed by appellee and so held by the trial court that, assuming a fraud upon the commissioner by the carrier, claimant was fully aware of his total disability and thereafter

participated in the fraud by signing an application to commute. True he knew his condition but it does not appear that he knew that a commutation would not be allowed as a means of compromising a compensation claim, which was what both parties wanted.

Scheel v. Superior Mfg. Co., 249 Iowa 873, 89 N.W.2d 377, is cited and relied upon by the appellant in seeking the setting aside of the commutation. While the facts are not exactly the same as in the instant case, the question there discussed and the legal principles there announced are similar and are applicable to this case. We think a fair examination of the record shows the claimant has sustained the burden of showing that fraud was exercised by the carrier in procuring the commutation and that the trial court erred in not so holding.

One other proposition is involved. The trial court held that claimant had not commenced the action within the time allowed by rules 252 and 253 and is now barred from bringing this action. It is stated by the trial court that the issue was not argued, and nowhere in the pleadings is the question raised. In the motion for a directed verdict it was stated by the movant that due diligence was not shown. Rules 252 and 253 are, in effect, statutes of limitation—an affirmative defense. Assuming such rules to be applicable, we think defendants by failing to plead the same are not now in a position to benefit thereby.

The judgment of the trial court is reversed and the commutation set aside. Cause remanded for a decree in accord herewith. —Reversed.

All JUSTICES concur.