**CITY OF OTTUMWA and Iowa Municipal Workers' Compensation Association, Appellants,**

v.

**Russell POOLE, Appellee.**

**No. 02–1493.**

Supreme Court of Iowa.

Sept. 1, 2004.

Donna R. Miller and Peter M. Sand of Grefe & Sidney, P.L.C., Des Moines, for appellants.

William B. Tharp and Dennis W. Emanuel of Webber, Gaumer & Emanuel, P.C., Ottumwa, for appellee.

CARTER, Justice.

The City of Ottumwa (the city) and Iowa Municipal Workers' Compensation Association (IMWCA), its workers' compensation claim administrator, appeal from the district court's decree granting rescission of an agreement between the city and Russell Poole for a special case settlement of Poole's workers' compensation claim. The district court ordered rescission of the agreement based on its finding that a claims representative of IMWCA misrepresented certain material information and failed to disclose material information in the handling of Poole's workers' compensation claim. The court of appeals reversed the district court decree, concluding that the claims representative made no material misrepresentations and that her disclosures were sufficiently complete and accurate to preclude granting rescission of the agreement that had been negotiated between the parties. After reviewing the record and considering the arguments presented, we affirm the decision of the court of appeals and reverse the district court decree.

Poole sustained a back injury in March 2001 while working as a transit driver for the city. The employer's examining physician gave him a four-percent impairment rating, and his designated physician gave him a six-percent impairment rating. Poole was paid temporary disability benefits first premised on the four-percent disability rating and later on the six-percent disability rating.

Poole contacted the workers' compensation commissioner's office requesting information on filing a claim. He was told by that office that IMWCA was handling the administration of workers' compensation claims by employees of the City of Ottumwa. He was advised by the commissioner's office that in contacting IMWCA he should request interest on any benefits owed and not yet paid. The commissioner's office mailed Poole information concerning whole-body impairment prepared by the American Medical Association.

Poole then contacted IMWCA and conversed with Toni Lockwood, a claims specialist, concerning his entitlement to workers' compensation benefits. She informed him that he should send a demand letter and gave him advice concerning the information to be included therein. Thereafter, Poole wrote to IMWCA describing the circumstances surrounding his injury, the nature of his medical treatment, his disability rating, permanent work restrictions, and an estimate of future lost wages. He demanded $350,000 as a lump-sum settlement of all claims including future medical benefits.

One month later, Lockwood responded to Poole's demand and advised him that the $350,000 request exceeded the maximum benefits payable for permanent total disability, which would have been $106,990. The letter went on to state:

> Based on several factors which include a minimal permanent partial disability rating, and being a nonsurgical injury, we are able to extend an offer to you for 10% to the body less the amount of PPD paid at the time of settlement. The $10\% * 500$ weeks = 50 weeks of benefits at your compensation rate of $213.98 which totals $10,699.00. The total amount of PPD paid thus far has been 22 weeks at your rate of $213.98 which totals $4707.46. Please keep in mind that previously we had voluntarily agreed to pay the additional 2% to the body which was the difference between Dr. Carlstrom (treating physician) and Dr. Riggens (IME physician) impairment ratings.
>
> We look forward to receiving your response in the near future.

Later, a telephone conversation took place between Poole and Lockwood concerning the foregoing settlement offer. Following this conversation, Poole faxed to IMWCA a written acceptance of the offer.

When the formal documents to be presented to the workers' compensation commissioner were tendered to Poole for his signature, he refused to sign them. The city and IMWCA then brought an action for specific performance of the settlement agreement. Poole filed a counterclaim seeking rescission. The district court heard the evidence and found that an enforceable agreement had been reached between the parties. In considering Poole's counterclaim, the court ruled that he had established grounds for rescission based on a misrepresentation of material facts and a failure to disclose material facts. Other facts of importance will be discussed in our consideration of the legal issues presented.

## I. Scope of Review.

■ This was an action in equity for specific performance of a contract in which the defendant counterclaimed for rescis-

sion. Consequently, our review is de novo. Iowa R.App. P. 6.4. When considering the credibility of witnesses, the court gives weight to the findings of the trial court but is not bound by them. Iowa R.App. P. 6.14(6)(*g* ).

## II. *The Specific Performance Issue.*

■ Agreements for special case settlements are not binding unless approved by the workers' compensation commissioner pursuant to Iowa Code section 85.35. If an agreement has been reached for the submission of a special case settlement to the commission, it may be specifically enforced to the extent of ordering a party to sign the documents necessary for that purpose. *Dillon v. City of Davenport,* 366 N.W.2d 918, 925–26 (Iowa 1985). In such specific enforcement actions, the court does not act to influence the decision of the commissioner under section 85.35.

## III. *Rescission Issue.*

■ We have recognized that an action to rescind a contract based on misrepresentations is an equitable action that does not depend on knowledge of the falsity or intent to deceive. *Rubes v. Mega Life & Health Ins. Co.,* 642 N.W.2d 263, 269 (Iowa 2002); *Alpen v. Chapman,* 179 N.W.2d 585, 590 (Iowa 1970). To prevail on a rescission theory based on misrepresentation, the party requesting relief must prove (1) a representation, (2) falsity, (3) materiality, (4) an intent to induce the other to act or refrain from acting, and (5) justifiable reliance. *Hyler v. Garner,* 548 N.W.2d 864, 872 (Iowa 1996). We have recognized that in some instances a failure to disclose material facts may be the equivalent of a false assertion. *First Nat'l Bank v. Brown,* 181 N.W.2d 178, 182 (Iowa 1970).

■ The Restatement (Second) of Contracts speaks to the issue of nondisclosure as follows:

A person's non-disclosure of a fact known to him is equivalent to an assertion that the fact does not exist in the following cases only:

(a) where he knows that disclosure of the fact is necessary to prevent some previous assertion from being a misrepresentation or from being fraudulent or material.

(b) where he knows that disclosure of the fact would correct a mistake of the other party as to a basic assumption on which that party is making the contract and if non-disclosure of the fact amounts to a failure to act in good faith in accordance with reasonable standards of fair dealing.

(c) where he knows that disclosure of the fact would correct a mistake of the other party as to the contents or effect of a writing, evidencing or embodying an agreement in whole or in part.

(d) where the other person is entitled to know the fact because of a relation of trust and confidence between them.

Restatement (Second) of Contracts § 161 (1981). With respect to paragraph (d) of the Restatement rule, we have recognized that, if a workers' compensation claims representative assumes the role of an advisor to a claimant, all relevant facts must be disclosed in reaching a settlement agreement. *Harrison v. Keller,* 254 Iowa 267, 271, 117 N.W.2d 477, 480 (1962). The comment to paragraph (d) of the Restatement rule states:

The rule stated in Clause (d) supplements that stated in § 173 with respect to contracts between parties in a fiduciary relation. Where the latter rule applies, as in the case of a trustee, an agent, a guardian, or an executor or administrator, its more stringent re-

quirements govern. Even where a party is not, strictly speaking, a fiduciary, he may stand in such a relation of trust and confidence to the other as to give the other the right to expect disclosure. Such a relationship normally exists between members of the same family and may arise, in other situations as, for example, between physician and patient. In addition, some types of contracts, such as those of suretyship or guaranty, marine insurance and joint adventure, are recognized as creating in themselves confidential relations and hence as requiring the utmost good faith and full and fair disclosure.

Restatement (Second) of Contracts § 161 cmt. f.

■ In evaluating Lockwood's role in the handling of Poole's workers' compensation claim, we are unable to conclude that it involved a relation of trust and confidence sufficient to invoke an enhanced duty of disclosure. The only actual advice given to Poole by Lockwood, as disclosed by the record, was with respect to the information to be included in a settlement demand. Insurance agents regularly request information from claimants that pertains to their claims. Lockwood's actions in this regard did not establish a relationship of trust and confidence with Poole. It is clear from the record that her dealings with him thereafter were at arms' length. As such she could negotiate with him based on circumstances that she deemed favorable to her evaluation of the claim. She was not required to bring up factors that might militate in favor of a larger award. That would have amounted to bidding against herself.

■ Poole's claims of falsity and failure of necessary disclosure are that Lockwood misrepresented his functional impairment rating as a body-as-a-whole disability rating and that she misinformed him by stating that he would not be entitled to future medical benefits. In carefully viewing the record with regard to these claims, we are convinced that Lockwood's reference to "a minimal permanent partial disability rating," was understood by both Poole and her as referring to the four-percent functional rating and six-percent functional rating previously obtained from Poole's examining physicians. Those were ratings of which both parties were aware. Although Poole is correct in contending that functional impairment ratings do not equate with body-as-a-whole industrial disability because the latter is based on lost earning capacity, functional impairments can play an important role in settlement negotiations. Poole's contention that Lockwood was treating these ratings as conclusive evidence of the extent of his industrial disability is belied by the fact that the percentage of disability involved in the settlement offer was greater than either of the ratings expressed by the doctors who had examined him. In addition, she invited him to make a counteroffer.

■ Poole also contends that Lockwood misrepresented his entitlement to future medical benefits. Poole's testimony at trial with respect to the settlement offer was as follows:

Q. You called Toni Lockwood in response to that letter? A. That's correct.

Q. And you accepted the offer of settlement? A. Yes, sir.

Q. Okay you said that when you read that letter you felt the only thing you were going to get was doctor ratings. Do you remember saying that? A. That's correct, because that's what the letter said.

Q. However, she was offering more than what the doctor ratings were, correct? A. That additional four percent?

Q. Yes. A. Yes, sir.

Q. And then when you called her up to accept the offer, she said, "you should feel free to make a counter instead of accepting the offer," correct? A. There were some words to that effect. I don't recall the exact words, sir.

To shortcut the length of cross-examination, the city offered a portion of Poole's deposition testimony, which was accepted by stipulation. Included in that testimony was the following:

Q. . . . Let me back up and go over this one more time. You would agree with me that the letter offers you 10 percent of the body less the amount of PPD paid at the time of the settlement? You agree that that's what it offers? A. Yes.

Q. Then it tells you that 10 percent just by itself would be, correct, 50 weeks? A. Okay. And it said that I was getting $10,699.

Q. That tells you how much 10 percent is by itself; correct? A. Yes.

Q. Then it tells you how much will be subtracted from the 10 percent, which is the amount that's been paid so far. A. Once again, sir, I don't feel that that states it's going to be subtracted. See, that's what was confusing me and that's why I called Toni was because I thought I was going to get that in addition, and the more I read it, the more confused I got. That's why I called Toni for clarification.

Q. Okay. A. And that's when I got the clarification.

Q. You got the letter and you called Toni *to talk to her about the offer* ? A. After I had read this over and over trying to understand it.

Q. So you call up Toni. A. Uh-huh.

Q. Can you tell me what you recall of the conversation. A. I apologized for bothering her and told her I had a stupid question, that the more I read this, the more confused I got and could she explain it to me. That's when she read it through to me that I was only going to get this and that it was based upon what the doctors have said, this 10 percent.

Q. And when you say only get this, you're referring to 10 percent minus whatever permanency has been paid already? A. *Yes. And I, once again, asked her about, "Does this mean also that I don't get any future medical benefits?" And she told me, "Yes."*

(Emphasis added.)

We find, based on Poole's own testimony, that the discussion of future medical benefits to which he refers was with regard to the terms of the settlement offer. It did not pertain to his potential entitlement in a litigated setting. We find on our de novo review that Poole has failed to establish grounds for rescission of the settlement based on either false representations or a failure to make required disclosures. The district court erred in rescinding the settlement agreement. The decision of the court of appeals is affirmed. The decree of the district court is reversed, and the matter is remanded to that court for the entry of a decree specifically enforcing the agreement to submit a special case settlement to the workers' compensation commissioner. Nothing contained in this opinion is intended to influence the action to be taken by the commissioner in approving or failing to approve the special case settlement.

**DECISION OF COURT OF APPEALS AFFIRMED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**