# IN THE SUPREME COURT OF IOWA

No. 20–0076

Submitted January 19, 2022—Filed May 20, 2022

**IN RE THE MARRIAGE OF SUSAN GAYLE HUTCHINSON AND ROBERT GREGORY HUTCHINSON.**

Upon the Petition of **SUSAN GAYLE HUTCHINSON,**

Appellee,

and Concerning **ROBERT GREGORY HUTCHINSON,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Linn County, Mitchell E. Turner, Judge.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**

Christensen, C.J., delivered the opinion of the court, in which Waterman, Mansfield, Oxley, and McDermott, JJ., joined. Waterman, J., filed a concurrence, in which Christensen, C.J., joined. McDonald, J., filed a dissent, in which Appel, J., joined.

Webb L. Wassmer (argued) of Wassmer Law Office, PLC, Marion, for appellant.

Richard F. Mitvalsky (argued) and Thomas F. Ochs of Gray, Stefani & Mitvalsky, P.L.C., Cedar Rapids, for appellee.

**CHRISTENSEN, Chief Justice.**

It is well established in Iowa law that in every dissolution of marriage proceeding, the court shall equitably divide all marital property. In order for the court to conduct a proper analysis of the property subject to an equitable division, it is imperative for the parties to fully and fairly disclose their financial status as required by Iowa Code section 598.13. If the dissolution decree is not appealed, its property division is not subject to modification unless it falls under one of two exceptions: (1) a petition for relief at law is commenced within one year after entry of decree (Iowa Rules of Civil Procedure 1.1012–.1013); or (2) a petition is commenced for relief with an independent action in equity based on extrinsic fraud. *Mauer v. Rohde*, 257 N.W.2d 489, 496 (Iowa 1977). Susan concedes she is precluded from pursuing an action at law under the first exception, leaving only the second exception at issue in this case.

Throughout months of negotiation within the dissolution of marriage proceeding, Robert (Greg) failed to disclose his GE retirement pension. Susan did not discover this omission until nearly five years later. Alleging extrinsic fraud by Greg, Susan seeks to modify the dissolution decree by awarding her part of Greg's GE pension. Greg argues that the alleged fraud was intrinsic. Furthermore, he argues that reasonable diligence on Susan's part would have led to the discovery of his GE pension within one year after the entry of the order. The district court determined Susan met her burden for relief as the nondisclosure of the GE pension was extrinsic and that Susan would not have been able to find the GE pension within one year through the use of reasonable

diligence. On appeal, the court of appeals opinion agreed that the fraud was extrinsic but reversed the district court's determination that Susan would have found the GE pension with reasonable diligence. The court of appeals also determined various attorney fees issues were unwarranted or required a remand to the district court for further consideration.

On further review, we hold that Greg's concealment of the GE pension was intrinsic fraud. We further hold that Susan would have discovered the omitted pension within one year after the decree was entered with reasonable diligence because it was referred to in a document she received before she signed the stipulation that led to the entry of a dissolution decree. Therefore, we vacate the court of appeals determination that the alleged fraud was extrinsic. All other determinations by the court of appeals are affirmed with remand to district court as outlined in its opinion.

## I. Background Facts and Proceedings.

Susan and Robert (Greg) Hutchinson were married in 1990. Susan primarily worked as a broker-dealer at Berthel Fisher and as a financial assistant at F&M Bank. Greg worked as a salesperson at Ingersoll Rand and General Electric (GE). During his employment at GE between 2000 and 2014, Greg participated in a 401(k) retirement plan and a defined benefit pension. The GE pension vested in 2007. Susan filed a Petition for Dissolution on April 22, 2010. Throughout the legal proceeding, Susan was represented by counsel and Greg elected to represent himself.

A standard family law case requirements order was soon entered, which required the parties to file an affidavit of financial status and exchange financial information (i.e. "[c]opies of IRA accounts, retirement plans, 401k's, deferred compensation, savings plans and any other similar plan documents"). Greg never filed a financial affidavit. On July 12, Susan filed a financial affidavit, which included a "GE Retirement" security valued at $126,000 and was solely in Greg's name. Greg had provided a document regarding the existence and evaluation of the "GE Retirement" security. According to Susan's attorney, this document solely referenced the GE 401(k).

Between July 12 and October 28, several drafts of a proposed property settlement or stipulation were circulated between Susan's attorney and Greg. Each draft contained a general disclosure provision providing, "Each party states that they have fully disclosed all of their assets, income and liabilities to the other and that each party has had full and fair opportunity to make inquiry as to the same or has waived such right." Under the securities/retirement plans portion of the stipulation, each draft contained a specific disclosure provision that stated, "The parties have provided updated information to each other for the values of these accounts/plans as of June 2010, or the closest date for which financial information is available." Each draft listed "GE retirement fund" as an asset to remain with Greg at a value of $126,000.

Greg made several detailed and organized requests and counteroffers throughout the negotiations for a satisfactory stipulation including asset evaluation, alimony, and life insurance. With regard to the securities/retirement

plans portion of the stipulation, the parties did negotiate that Susan would remain a 50% beneficiary of Greg's Pacific Life annuity until his spousal support obligation ceased. However, neither party made requests or counteroffers regarding the GE retirement fund during the negotiations.

On October 28, Greg emailed Susan's attorney agreeing to the terms of the final draft of the stipulation and decree. In the same email, Greg asked Susan to sign and notarize a GE consent form in order to waive "her right to GE death benefits and allow[] me to redirect them to my children." Susan's attorney responded that she would notify Susan of the consent form. The next day, Greg delivered a blank copy of the GE consent form to the office of Susan's attorney and signed the final draft of the proposed stipulation. At no point did Greg discuss the GE consent form directly with Susan.

The GE consent form delivered to Susan's attorney contained a section as follows:

**Section 2- Spouse's Consent to Waive Rights to Benefits (*To be completed by your spouse*)**

PLEASE CHECK EACH BOX THAT APPLIES AND PROVIDE THE REQUIRED SIGNATURES IN INK.

☐ I waive my spousal rights to pre-retirement death benefits from the GE Pension Plan (including the Pre-Retirement Spouse Benefit) that would otherwise be payable to me at my spouse's death, having reviewed an explanation of my surviving spouse benefits.

☐ I waive my spousal rights to benefits from my spouse's GE Savings & Security Program account balance. I acknowledge that I have reviewed the beneficiary designation form and understand the consequences of this consent.

I understand that it is my responsibility to carefully review the beneficiary confirmation, when it is received by mail, to confirm that the beneficiary designation form <u>fully represents my intentions</u>.

Greg did not provide Susan with the GE beneficiary designation form as referred to in the second check box. This additional form required Greg to supply his personal information and fill out four sections. The first section required the GE employee to "*Check* [the boxes of] *only those plans for which you want this beneficiary designation to apply.*" Those plans included the GE Pension Plan, GE Savings & Security Program, and four other plans. The second section required the GE employee to select a primary beneficiary, while the third section provided the GE employee with an optional contingent beneficiary. The final section required a signature and date to validate the designation. The final signature section also required a spouse's signature if the primary beneficiary for any death benefits under the GE pension plan or the GE Savings and Security Plan was not the spouse.

Greg and Susan signed a final draft of the proposed stipulation respectively on October 29 and November 1. The final stipulation divided the disclosed marital assets evenly. Greg received the entirety of the "GE retirement fund." Susan received $1,200 of spousal support over four years. Greg and Susan signed the stipulation under oath, indicating that they had read the stipulation and that all "the statements are true as I verily believe."

The parties agreed upon a proposed decree that incorporated their signed stipulation. The proposed decree contained a provision that "each party has fully disclosed all of their assets, income and liabilities to the other either in the form

of financial affidavits or through sharing information. Each party has had a full and fair opportunity to make inquiry as to assets, income and liabilities of the other or waives same." The court approved and filed the proposed order on November 2.

Ten days later, Greg emailed Susan's attorney and indicated that he had not received the signed and notarized GE consent form. That same day, Susan's attorney replied that she would mail the signed form to him. Shortly after her first email, Susan's attorney sent another email stating, "[W]e had a question about which box to check on the form. Susan signed it [on November 1] but we were reviewing. My legal assistant may have decided to just send it to you and let you identify the relevant plan (check the box). She would have flagged it for your attention."

The legal assistant mailed the signed GE consent form to Greg that same day, November 12, with a letter asking Greg to:

> Please confirm in Section 2 which plan you are participating in (GE Pension Plan or GE Savings & Security Program) and check the appropriate box. I have reviewed this with Susan and you have permission to do so. We would appreciate it if you would return a copy of the form (or scan and email) when Section 2 is complete. If you have any questions, please do not hesitate to call me or [Susan's attorney].

When Greg received the consent form from Susan's attorney, he checked the box relating to the GE Pension Plan.[1] On the GE beneficiary designation form,

---

[1]The district court's summary judgment order and final order made a factual finding that one box, the GE Pension Plan, was checked on the GE consent form. The court of appeals majority stated that *both* boxes were filed out on the GE consent form. Based on the record, and as affirmed by counsel during oral argument, the court of appeals was incorrect to suggest both boxes were filled on the GE consent form.

he checked *both* boxes relating to the GE Pension Plan and GE Savings & Security Program. Additionally, he changed the primary beneficiary to his girlfriend on the GE beneficiary designation form—not to his children as he previously told Susan's attorney. He did not send a copy of the GE consent form to Susan's attorney as requested.[2] However, neither Susan nor her attorney followed up with Greg to receive a copy of the consent form. Greg also did not provide Susan's attorney with a copy of the filled out GE beneficiary designation form.

Nearly five years passed when Greg asked Susan to sign a full satisfaction of judgment regarding spousal support. On September 3, 2015, they met at the University of Iowa Credit Union, where Greg informed Susan that he retired from GE and was receiving a "nice pension." Susan immediately questioned Greg about his failure to disclose the GE pension during the divorce proceedings. Greg responded that it was "too late" and Susan could not "do anything about it now."

Approximately seven months later, Susan filed a petition to vacate, modify, or correct. The petition requested modification of the dissolution decree pursuant to an independent action in equity and modification of alimony pursuant to Iowa Code section 598.21C (2016). Greg filed for summary judgment on both counts. The district court dismissed the modification of alimony count on summary judgment because the court lacked the authority to divide marital property for

---

[2]Greg testified that he hand-delivered the GE consent form back to the legal assistant for Susan's attorney. The district court determined that his testimony was not credible on this point and the court of appeals agreed. In his further review brief, Greg acknowledged that he did not return a copy of the GE consent form to Susan's attorney.

an award of alimony. However, the district court denied summary judgment on the request to modify the dissolution decree because questions of fact existed as to whether Susan would have discovered the GE pension if she exercised reasonable diligence as well as other factual questions related to the elements of fraud.

After a two-day trial, the district court found that Greg was aware his pension was vested before the divorce proceedings occurred and that he understood he had an obligation to disclose the pension during the divorce proceedings. The district court also determined neither Susan nor her attorney had knowledge of the GE pension until Greg revealed its existence to Susan at the credit union nearly five years later.

Based on its factual findings, the district court determined modification of the decree was appropriate. First, it concluded Greg's affirmative concealment of the pension constituted extrinsic fraud because the concealment prevented Susan from having a discussion on how to distribute the GE pension. Second, the district court found Susan would not have been able to discover the pension with due diligence. Third, it determined Susan proved all of the required elements for fraud. As a remedy, the district court ordered Susan to begin receiving a monthly pension benefit of $668.63 per month from the GE pension according to the *Benson* formula.[3] The district court also required Greg to

---

[3]"The *Benson* formula is a method used to divide a defined benefit plan for the purposes of marital property settlement. *See In re Marriage of Benson*, 545 N.W.2d 252, 254–55 (Iowa 1996) (en banc). The service factor percentage method divides the pension according to a percentage multiplied by a factor based on the member's service during the marriage and the member's total service. *Id.* (providing formula)." *In re Marriage of Miller*, 966 N.W.2d 630, 634 n.2 (Iowa 2021).

reimburse Susan $40,117.80 in back benefits from his 401(k) acquired through his postmarital job at Integrated Sales.

The district court also ordered Greg to pay $7,056 in attorney fees as a sanction for failing to provide information about the GE Pension Plan. The district court determined it could not award attorney fees to Greg for obtaining summary judgment on the modification of alimony because attorney fees are not awardable in an action filed pursuant to Iowa Rule of Civil Procedure 1.1012.

Greg appealed. We transferred the case to the court of appeals, which issued a split decision. The majority determined Susan was not entitled to a modification of the decree's property division. Specifically, the majority analyzed how Susan failed to establish she would not have been able to discover the pension with reasonable diligence. The majority also expressed concerns that the nondisclosure of the GE pension was a form of intrinsic fraud but felt constrained by our prior precedent, *Graves v. Graves* (*Graves I*), to hold the nondisclosure was extrinsic. 109 N.W. 707 (Iowa 1906). The court therefore reversed the district court's order regarding the modification of the dissolution decree. It did not reach the issues of whether Greg committed fraud or if the appropriate remedy was to use funds from Greg's Integrated Sales 401(k). The majority also concluded a remand was appropriate to determine whether Greg should have been awarded attorney fees for obtaining summary judgment on Susan's claim for modification of the spousal support award and to develop a record regarding whether the district court exceeded its discretion in requiring Greg to pay $7,056 in attorney fees as a sanction. The majority denied Susan's

request for appellate attorney fees. We granted Susan's application for further review.

## II. Standard of Review.

A motion to modify a final order for fraud under Iowa Rule of Procedure 1.1012 is reviewed for errors at law. *In re Marriage of Cutler*, 588 N.W.2d 425, 429–30 (Iowa 1999); *see In re Adoption of B.J.H.*, 564 N.W.2d 387, 391 (Iowa 1997) ("[O]ur standard of review is that applicable to appeals of orders issued on rule 252 [(now rule 1.1012)] petitions to vacate, even though the judgment vacated was rendered in an equity case."). However, an independent action in equity to modify a decree based on fraud is reviewed de novo. Iowa R. App. P. 6.907; *Johnson v. Mitchell*, 489 N.W.2d 411, 415 (Iowa Ct. App. 1992). In such cases, the court "give[s] weight to the factual determinations made by the district court; however, their findings are not binding upon us." *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015).

"We have discretion to choose which issues we review when we take a case on further review." *In re D.M.*, 965 N.W.2d 475, 480 n.2 (Iowa 2021) (quoting *Holmes v. Pomeroy*, 959 N.W.2d 387, 389 (Iowa 2021)).

## III. Analysis.

"In dissolution-of-marriage cases, marital property is to be divided equitably, considering the factors outlined in Iowa Code section 598.21[(5)]." *In re Marriage of Miller*, 966 N.W.2d 630, 635 (Iowa 2021) (alteration in original) (quoting *In re Marriage of McDermott*, 827 N.W.2d 671, 678 (Iowa 2013)). Retirement pensions are considered marital property. *Id.* at 636 (collecting

cases); *see* Iowa Code § 598.21(5)(*i*) (requiring the court to consider the "[o]ther economic circumstances of each party, including pension benefits, vested or unvested").

Property divisions in a dissolution decree are not usually subject to modification following the conclusion of a direct appeal. Iowa Code § 598.21(7); *see In re Marriage of Brown,* 776 N.W.2d 644, 647 (Iowa 2009). However, property divisions in a dissolution decree can be subject to modification after direct appeal if there is a finding of "fraud, duress, coercion, mistake or some other grounds that would justify changing the decree." *Brown,* 776 N.W.2d. at 647. *See generally* 27A C.J.S. *Divorce* § 393, Westlaw (database updated November 2021) ("Fraud or imposition in obtaining a divorce decree or judgment is generally recognized as a sufficient ground for vacating, modifying, or setting it aside."). "In terms of raw number of reported cases, fraud is probably the most common basis actually used to set aside final judgments dividing marital property." 3 Brett R. Turner, *Equitable Division of Property* § 9.30, Westlaw (database updated December 2021).

Iowa Rule of Civil Procedure 1.1012(2) allows a court to "correct, vacate or modify a final judgment or order, or grant a new trial" if there was "[i]rregularity or fraud practiced in obtaining it" upon a timely petition. This petition "must be filed and served in the original action within one year after the entry of the judgment or order involved." *Id.* r. 1.1013(1). Susan filed her petition over five years after the entry of the dissolution decree. The parties agree, as the district court and court of appeals both correctly determined, that Susan cannot pursue

an action *at law. In re Marriage of Fairall,* 403 N.W.2d 785, 788 (Iowa 1987) (explaining that an action at law must be filed within one year of the judgment or order).

The resolution of this case turns on whether Susan can modify the dissolution decree with an independent action *in equity.* Iowa Rules of Civil Procedure 1.1012 and 1.1013 lack an explicit "independent action" in equity exception to the one-year deadline as compared to Federal Rule of Civil Procedure 60 and similar state rules. *Compare* Iowa Rs. Civ. P. 1.1012–.1013, *with* Fed. R. Civ. P. 60(d)(1) ("This rule does not limit a court's power to: . . . entertain an independent action to relieve a party from a judgment, order, or proceeding . . . ."), *and* Ind. R. Trial P. 60(B) ("This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding . . . ."). However, we have historically allowed parties to bring an independent action in equity as a common-law exception to the explicit deadline in Iowa Rule of Civil Procedure 1.1013. *Carter v. Carter,* 957 N.W.2d 623, 645–46 (Iowa 2021).

Also absent from the Iowa Rules of Civil Procedure is an explicit exception for an Iowa court to set aside a judgment at any time for fraud upon the court. *Compare* Iowa Rs. Civ. P. 1.1012–.1013, *with* Fed. R. Civ. P. 60(d)(3) ("This rule does not limit a court's power to: . . . set aside judgment for fraud on the court."), *and* Ind. R. Trial P. 60(B) ("This rule does not limit the power of a court . . . relieve a party from a judgment, order or proceeding . . . for fraud upon the court."). There is some debate as to whether extrinsic fraud is recognized as "fraud upon

the court." *Compare Parker v. Parker*, 950 So. 2d 388, 391 (Fla. 2007) ("[T]his one-year limit does not apply to extrinsic fraud, because extrinsic fraud is considered 'fraud on the court.' "), *and Chewning v. Ford Motor Co.*, 579 S.E.2d 605, 609–10 (S.C. 2003) ("There is no statute of limitations when a party seeks to set aside a judgment due to fraud upon the court. In order to secure equitable relief on the basis of fraud, the fraud must be extrinsic." (citations omitted)), *with Glover v. Torrence*, 723 N.E.2d 924, 933 (Ind. Ct. App. 2000) ("While extrinsic fraud and fraud on the court are closely aligned . . . there are differences between the two. Extrinsic fraud may be found where the fraudulent matter prevented a trial of the issue in the case or improperly procured the exercise of the court's jurisdiction. . . . Fraud upon the court, on the other hand, has been more narrowly limited to the most egregious of circumstances where an unconscionable plan or scheme was used to improperly influence the court's decision, and such acts prevented the opposing party from fully and fairly presenting his case." (citation omitted)), *and In re Marriage of Miller*, 902 P.2d 1019, 1022–23 (Mont. 1995) ("Fraud upon the court embraces only that species of fraud which subverts or attempts to subvert the integrity of the court itself . . . . Extrinsic fraud has been defined as some intentional act or conduct by which the prevailing party has prevented the unsuccessful party from having a fair submission of the controversy." (citations omitted)).

Our caselaw appears to use the terms "fraud upon the court" and "extrinsic fraud" interchangeably. *See, e.g., Scheel v. Superior Mfg. Co.*, 89 N.W.2d 377, 385 (Iowa 1958); *Brown v. Blanchard*, 35 N.W.2d 858, 869–70 (Iowa

1949); *In re Sarvey's Est.*, 219 N.W. 318, 320 (Iowa 1928); *Graves v. Graves* (*Graves II*), 115 N.W. 488, 489 (Iowa 1908); *Miller v. AMF Harley-Davidson Motor Co.*, 328 N.W.2d 348, 353–54 (Iowa Ct. App. 1982) (en banc). Because of the similar considerations, other jurisdictions analyzing whether nondisclosure of marital assets is fraud upon the court are sufficiently relevant to our search as to whether asset nondisclosure constitutes extrinsic fraud.

The burden that a party bears in "attempting in an equity suit to set aside a judgment or decree and to obtain a new trial is a heavy one." *Shaw v. Addison*, 18 N.W.2d 796, 802 (Iowa 1945). First, the alleged fraud must include extrinsic fraud rather than solely intrinsic fraud. *Carter*, 957 N.W.2d at 645). Second, the party would not have been able to discover the fraud within one year by using reasonable or due diligence. *City of Chariton v. J.C. Blunk Const. Co.*, 112 N.W.2d 829, 835 (Iowa 1962). Lastly, the party must show the traditional elements of fraud. *Cutler*, 588 N.W.2d at 430.

**A. Intrinsic v. Extrinsic.** We begin by providing a description of intrinsic fraud and surveying examples of intrinsic fraud in our caselaw. "Intrinsic fraud is that which inheres in the issues submitted to and decided by the court . . . ." *Stearns v. Stearns*, 187 N.W.2d 733, 735 (Iowa 1971). We have said intrinsic fraud "occurs within the framework of the actual conduct of the trial and pertains to and affects the determination of the issue presented therein." *Mauer*, 257 N.W.2d at 496 (quoting *Auerbach v. Samuels*, 349 P.2d 1112, 1114 (Utah 1960)).[4]

---

[4]The dissent claims that *intrinsic* fraud exists only if it occurred during trial. The dissent's logic is unsupported by *Graves I* or the dissent's leading unpublished court of appeals decision *Rhinehart*, which both found *extrinsic* fraud occurred even though the parties had the

But we have further explained intrinsic fraud is "predicated on matters or issues which actually were, or which with due diligence could have been, presented and adjudicated in the original proceedings." *Gigilos v. Stavropoulos*, 204 N.W.2d 619, 621 (Iowa 1973) (quoting 49 C.J.S. *Judgments* § 372(b)(2)); *see Cook v. Cook*, 146 N.W.2d 273, 276 (Iowa 1966) (" '[A]ny fraudulent matter that was presented and considered in rendering judgment.' . . . '[I]ntrinsic' fraud relates to questions that were in conflict and not necessary for the court to determine." (quoting *Crouch v. McGaw*, 138 S.W.2d 94, 97 (Tex. 1940))); *Graves I*, 109 N.W. at 709 ("In all other cases where new trials were granted, there was some active fraud, omission, or concealment, some extrinsic or collateral acts *not involving the merits of the case*." (emphasis added)); *see also United States v. Throckmorton*, 98 U.S. 61, 68 (1878) ("[T]he acts for which a court of equity will on account of fraud set aside or annul a judgment or decree, between the same parties, rendered by a court of competent jurisdiction, have relation to frauds, extrinsic or collateral, to the matter tried by the first court, and *not to a fraud in the matter on which the decree was rendered*." (emphasis added)). Examples of intrinsic fraud include perjury, false or forged instruments, and concealment or misrepresentation of evidence. *Mauer*, 257 N.W.2d at 496; *see, e.g.*, *Phipps v. Winneshiek County*, 593

---

opportunity to contest any alleged fraud at trial. *Graves I*, 109 N.W. at 709 ("[B]ut when he has a trial, he must be prepared to meet and expose perjury then and there. He knows that a false claim or defense can be supported in no other way . . . ."); *In re Marriage of Rhinehart*, No. 09–0193, 2010 WL 446560, at *3 (Iowa Ct. App. Feb. 10, 2010). Additionally, the dissent's understanding of intrinsic fraud would contradict other unpublished Iowa court of appeals decisions holding fraudulent asset *valuation* on a stipulation or settlement agreement is a form of intrinsic fraud that would also prevent a fair submission of the controversy. *See In re Marriage of Fitzpatrick*, No. 19–0033, 2020 WL 4497961, at *4–5 (Iowa Ct. App. Aug. 5, 2020); *In re Marriage of Moreland*, No. 19–1135, 2020 WL 2988545, at *2–3 (Iowa Ct. App. June 3, 2020); *In re Marriage of Bacon*, No. 11–0368, 2011 WL 4579601, at *5 (Iowa Ct. App. Oct. 5, 2011).

N.W.2d 143, 145 (Iowa 1999) (stating false deposition testimony was intrinsic fraud); *In re Marriage of Melton*, 256 N.W.2d 200, 206 (Iowa 1977) ("[T]he fraud alleged here (duress in signing the stipulation) is intrinsic fraud because it inheres in the issues originally submitted to and decided by the trial court when the decree was entered.").

On the other hand, "[e]xtrinsic fraud is some act or conduct of the prevailing party which has prevented a fair submission of the controversy." *In re Marriage of Short*, 263 N.W.2d 720, 723 (Iowa 1978). Extrinsic fraud has also been "described as that fraud which keeps a litigant from presenting the facts of his or her case and prevents an adjudication on the merits." *Mauer*, 257 N.W.2d at 496. This includes "lulling a party into a false sense of security or preventing the party from making a defense." *Costello v. McFadden*, 553 N.W.2d 607, 612 (Iowa 1996). Classic examples of extrinsic fraud include "a bribed judge, dishonest attorney representing the defrauded client, or a false promise of compromise." *Mauer*, 257 N.W.2d at 496.

The parties disagree on whether Greg's nondisclosure of the GE pension constitutes extrinsic or intrinsic fraud. Greg cites the unpublished court of appeals case *In re Marriage of Bacon* for the proposition that the failure to disclose the GE pension on the parties' stipulation was comparable to a false affidavit or perjury that constitutes intrinsic fraud. No. 11–0368, 2011 WL 4579601, at *5 (Iowa Ct. App. Oct. 5, 2011) (determining intrinsic fraud occurred when the wife filed inflated values on marital assets in the financial affidavit). Susan counters with the unpublished court of appeals case *In re Marriage of*

*Rhinehart* to argue Greg's failure to disclose the GE pension prevented her from having a fair submission of the property division to constitute extrinsic fraud. No. 09–0193, 2010 WL 446560, at *3 (Iowa Ct. App. Feb. 10, 2010) (determining extrinsic fraud occurred when husband failed to disclose his representation in two contingency fee lawsuits during depositions and the trial).[5]

As the parties, district court, and court of appeals recognized, our most factually on-point case on asset nondisclosure and extrinsic fraud is *Graves I*, 109 N.W. 707. In *Graves I*, the husband engaged in "false testimony . . . in the original proceeding, regarding the character and amount of his property, and fraudulent concealment of his property" albeit without much explanation as to how the fraudulent concealment of his property occurred. *Id.* at 707; *see Graves II*, 115 N.W. at 489 (explaining on appeal from remand that the husband "had money and property to the amount of $900 to $1,500, all of which he had concealed, and that he had such property at the time of the final hearing"). Based on this testimony, the wife, who had one child with the defendant, was not awarded alimony. *Graves I*, 109 N.W. at 707. The wife initiated an action to reopen the case due to fraud, particularly with regard to alimony. *Id.* (noting that

---

[5]We denied further review of *Rhinehart. Iowa Sup. Ct. Att'y Disciplinary Bd. v. Rhinehart*, 827 N.W.2d 169, 173 (Iowa 2013); *see also* Iowa Ct. R. 21.27(3) ("Denial of further review shall have no precedential value."). We did "give preclusive effect to the extrinsic fraud finding" in a correlating attorney disciplinary proceeding. *Rhinehart*, 827 N.W.2d at 179. However, our analysis was focused on whether asset nondisclosure was a fraud committed in violation of Iowa Rule of Professional Conduct 32:8.4(c), not whether the fraud was extrinsic or intrinsic. *Id.* at 180. Moreover, issue preclusion applies even if the underlying decision was incorrect. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) ("Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case.").

the wife's action fell with the equitable independent action exception because it was filed outside of a year).

The *Graves I* court subsequently upheld the district court's decision to reopen the case based on the external concealment of assets. *Id.* at 709. The *Graves I* court clearly stated that "false swearing or perjury alone is not ground for setting aside or vacating a judgment." *Id.* However, if the false swearing or perjury is "accompanied by any fraud extrinsic or collateral to the matter involved in the original case sufficient to justify the conclusion that but for such fraud the result would have been different, a new trial may be granted." *Id.* Like the court of appeals majority in this case, we also have a difficult time identifying exactly what action Graves took that constituted extrinsic fraud. The only action described in detail is that Graves perjured himself, which would be intrinsic. Thus, *Graves I* provides little precedential support for the notion that asset nondisclosure is extrinsic.

A majority of jurisdictions have held asset nondisclosure is a form of intrinsic fraud irrespective of whether a trial has occurred. *See, e.g., Lowe v. Lowe,* 817 P.2d 453, 457 n.9 (Alaska 1991) (determining nondisclosure of a house and retirement income from the dissolution petition did not rise to fraud on the court); *Miller,* 902 P.2d at 1023 (holding that husband's false representation to pay debts in a settlement agreement was a form of intrinsic fraud); *Chapman v. Chapman,* 692 P.2d 1369, 1373 (Okla. 1984) (describing nondisclosure of spousal property in predivorce settlement negotiations was intrinsic fraud because the fraud was "perpetrated *within* the course of adversary

proceedings."); *Black v. Black*, 166 S.W.3d 699, 704 (Tenn. 2005) (concluding withholding identity and value of assets in dissolution agreement was intrinsic fraud because it "concerned the subject matter of the litigation").[6] These jurisdictions indicate that asset nondisclosure occurs within the framework of the divorce proceedings. *See Chapman*, 692 P.2d at 1373; *Black*, 166 S.W.3d at 709. Essentially, the nondisclosure of assets is comparable to other forms of intrinsic fraud such as perjury. *Miller*, 902 P.2d at 1023. This approach tracks with the court of appeals majority's explanation that asset nondisclosure looks very similar to the concealment of evidence, perjury, or misrepresentation of evidence, which we have held to be intrinsic fraud. *Mauer*, 257 N.W.2d at 496; *see Melton*, 256 N.W.2d at 206.

We agree with the court of appeals majority and authority from other jurisdictions that these facts show intrinsic fraud. Here, the stipulation dividing

---

[6]*Ward v. McCord*, 966 S.W.2d 925, 929–30 (Ark. Ct. App. 1998) (determining the concealment of a $42,000 savings account from a property settlement agreement was intrinsic fraud); *Fritsche v. Thoreson*, 410 P.3d 630, 633–34 (Colo. App. 2015) (determining nondisclosure of pension and employment-related lawsuit funds from a negotiated allocation of marital assets was intrinsic fraud); *Jahangirizadeh v. Pazouki*, 27 N.E.3d 1178, 1182–84 (Ind. Ct. App. 2015) (determining the concealment of $50,000 bank deposit from a financial declaration was a form of ordinary fraud); *Hresko v. Hresko*, 574 A.2d 24, 28 (Md. Ct. Spec. App. 1990) (determining concealment of a sum of money during property settlement negotiations was intrinsic fraud); *Smith v. Smith*, 627 S.W.3d 82, 94 (Mo. Ct. App. 2021) ("Wife allegedly concealing the Bank of America credit card debt from Husband in the dissolution action constituted intrinsic fraud because the division of property and debt was an issue in the dissolution proceedings and was part of the underlying dissolution judgment incorporating the parties' Marital Settlement Agreement."); *Altman v. Altman*, 542 N.Y.S.2d 7, 9 (1989) (holding that "fraud in the negotiation of the separation agreement" constituted intrinsic fraud because it was involved an "issue in controversy"); *Hewett v. Zegarzewski*, 368 S.E.2d 877, 879 (N.C. Ct. App. 1988) (concealment of a separate stock account and transfer of funds during marriage from a stipulation and property settlement agreement was intrinsic fraud); *Ortmann v. Ortmann*, 999 S.W.2d 85, 89 (Tex. App. 1999) (concealing settlement funds as a bond was "an actual issue in the underlying suit, and therefore, can hardly be said to be a collateral matter"); *Ellet v. Ellet*, 542 S.E.2d 816, 818 (Va. Ct. App. 2001) (holding misrepresentation of the "true status of the family's bills and accounts" on a property settlement agreement was intrinsic fraud because it pertained to a matter "that could have been raised during the divorce proceeding").

property, drafted by Susan's attorney, was presented in a hearing to a court tasked with equitably dividing assets, which incorporated the stipulation into a judgment. *Melton*, 256 N.W.2d at 206; *see Hewett v. Zegarzewski*, 368 S.E.2d 877, 879 (N.C. Ct. App. 1988). Consistent with the understanding that the fraud occurred within the proceeding, the dissolution decree and every proposed stipulation had a specific provision that stated: "Each party has had a full and fair opportunity to make inquiry as to assets, income and liabilities of the other *or waives same.*" (Emphasis added); *see Hewett*, 368 S.E.2d at 877 (involving a similar waiver provision). The law favors an end to litigation, particularly with regard to property rights that "ought to be accorded some permanency." *Knott*, 331 N.W.2d at 137; *see Hresko v. Hresko*, 574 A.2d 24, 28 (Md. Ct. Spec. App. 1990).

The facts in this case are not comparable to previous examples of extrinsic fraud as found in Iowa cases. This is not a situation of extrinsic fraud where one party makes false promises outside of the proceeding to prevent another party from knowing about a case altogether or inducing them to not defend one. *See, e.g.*, *State ex rel. Iowa Dep't of Hum. Servs. v. Meyer*, 381 N.W.2d 633, 635 (Iowa 1986) (determining extrinsic fraud existed when letter from petitioner to her attorney directing dismissal of the proceeding "was in fact dictated by the respondent who enticed the petitioner to write and sign it on his promise to continue to demonstrate a fatherly role to the child"); *Brown*, 35 N.W.2d at 869 (determining extrinsic fraud existed when plaintiff "induced the defendant to execute a written appearance and consent to jurisdiction . . . with no contest by

defendant. Thereafter without the knowledge or consent of the defendant, plaintiff changed the original notice which he filed in court by adding therein a statement that plaintiff would ask a decree quieting in him the title to all property"); *Tollefson v. Tollefson,* 114 N.W. 631, 632 (Iowa 1908) (per curiam) (determining extrinsic fraud existed when wife was induced to go to Norway at the insistence of husband and promised that he would join her but then husband initiated divorce proceedings in Iowa on the grounds of desertion); *In re Marriage of Stanbrough,* No. 99–840, 2000 WL 1157844, at *1, *4 (Iowa Ct. App. Aug. 16, 2000) (determining extrinsic fraud existed when wife signed dissolution agreement but did not agree to terms "freely and voluntarily or with full knowledge of its implications" because husband stated wife would incur substantial debt and not get custody or even see children if she did not immediately sign dissolution agreement, prevented her from consulting an attorney or reviewing the dissolution agreement, and took unfair advantage of her mental state); *In re Marriage of Kinnard,* 512 N.W.2d 821, 823 (Iowa Ct. App. 1993) (determining extrinsic fraud existed when the husband remarried and then divorced wife again after claiming he stopped seeing his girlfriend, promised to attend marriage counseling, and deprived wife of seeing the financial provisions of the original dissolution decree).[7] This is also not a case where a

---

[7]The dissent in this case also claims that in *In re Marriage of Short* we found extrinsic fraud when the wife "assured the husband that he need not respond and that she would not seek child support," which lead to a default judgment. *Short,* 263 N.W.2d at 721. While the facts in *Short* may be consistent with making an illusory promise outside the proceedings to not defend an action, that did not happen here. Importantly, the *Short* court also never made a determination that those facts constituted extrinsic fraud because the respondent was denied the ability to develop those facts below. *Id.* at 723; *see In re Marriage of Heneman,* 396 N.W.2d

party fraudulently procured jurisdiction, something that is always a ground to vacate the decree. *J.C. Blunk Const. Co.*, 112 N.W.2d at 835; *see, e.g., Snyder v. Snyder*, 35 N.W.2d 32, 33 (Iowa 1948) (determining extrinsic fraud existed when the petition falsely claimed the parties were from Iowa). The record shows no promises made outside the proceedings by Greg to Susan to dismiss the dissolution action or prevent her from knowing about the action or that jurisdiction was improper.

A leading scholar on equitable distribution, Brett R. Turner, has argued the majority approach "reaches a terrible result, for it imposes very strict time limits upon the right to reopen a divorce decree for deliberate, bad-faith, malicious concealment of marital assets." Brett R. Turner, *The Limits of Finality: Reopening Property Division Orders in Post-Judgment Proceedings*, 9 No. 8 Divorce Litig. 145, 158 (1997). "The defrauding spouse can reveal the true state of affairs, enjoy his or her ill-gotten gains, and even brag about his or her success, secure in the knowledge that the court can do nothing." *Id.* This concern is remarkably consistent with this case, as Greg boasted to Susan about his "nice pension" after he was done paying alimony for four years and "that there was nothing she could do about it."

As the dissent points out, a minority of states have held that asset nondisclosure is extrinsic fraud or fraud on the court.[8] Some community

---

797, 800 (Iowa Ct. App. 1986) ("In *Short* the Supreme Court . . . never reached the question of whether extrinsic fraud had been committed by [the] petitioner.").

[8]Some of the dissent's citations to other jurisdictions do not directly support the proposition that marital asset nondisclosure is extrinsic fraud or fraud on the court. In Connecticut, *Casanova v. Casanova* is inconsistent with the latter case of *Billington v. Billington*

property states have held asset nondisclosure is a form of extrinsic fraud because "each spouse has an obligation to inform the other spouse of the existence of community property assets." *In re Marriage of Modnick*, 663 P.2d 187, 191–92 (Cal. 1983) (en banc); *see also Bates v. Bates*, 400 P.2d 593, 597 (Ariz. Ct. App. 1965); *Compton v. Compton*, 612 P.2d 1175, 1182–83 (Idaho 1980). Minnesota has held that asset nondisclosure on a stipulation amounts to fraud on the court because "the court . . . sits as a third party to the stipulation" in marital dissolution cases. *Maranda v. Maranda*, 449 N.W.2d 158, 165 (Minn. 1989). South Carolina has held asset nondisclosure is extrinsic fraud if the nondisclosure is "coupled with an intentional scheme to defraud the court." *Ray v. Ray*, 647 S.E.2d 237, 241 (S.C. 2007). Other states have gone further to abandon the extrinsic-intrinsic distinction altogether. *Terwilliger v. Terwilliger*, 64 S.W.3d 816, 818 (Ky. 2002); *St. Pierre v. Edmonds*, 645 P.2d 615, 618–19 (Utah 1982) (collecting cases).

Some states, unlike Iowa, have solved this issue by creating specific rules or statutes that explicitly allow the reopening of dissolution decrees for the

---

because *Billington* determined fraud on the court "in the marital litigation context is properly confined to situations where *both parties* join to conceal material information from the court." *Billington v. Billington*, 595 A.2d 1377, 1383 (Conn. 1991) (per curiam) (emphasis added); *Casanova v. Casanova*, 348 A.2d 668, 668–69 (Conn. 1974) (per curiam). In *Pasko v. Trela*, the defrauded plaintiff filed a motion to vacate "within the time required" under law. 46 N.W.2d 139, 142 (Neb. 1951). In *Hamilton v. Hamilton*, the court did not "endorse or refute the merits of" the defrauded plaintiff's claim but simply held that an independent action in equity could be pursued despite it not being explicitly mentioned in the North Dakota Rules of Civil Procedure. 410 N.W.2d 508, 520 (N.D. 1987). In *Creeks v. Creeks*, the court placed undisclosed assets in a constructive trust pursuant to a statute rather than finding extrinsic fraud through an independent action in equity. 619 A.2d 754, 756–57 (Pa. Super. Ct. 1993)). In *St. Pierre v. Edmonds*, the court abolished the distinction between intrinsic and extrinsic fraud altogether to determine whether a party can vacate a judgment for fraud. 645 P.2d 615, 618–19 (Utah 1982).

nondisclosure of marital assets. Colorado and Florida have specific rules of civil procedure that allow a dissolution decree to be reopened well beyond the standard one-year timeframe for fraud. Colo. R. Civ. P. 16.2(e)(10) (allowing a dissolution decree to be reopened within five years for a fraudulent financial affidavit); Fla. Fam. L.R.P. 12.540 (allowing a dissolution decree to be reopened at any time for fraudulent financial affidavit). North Dakota has a specific statute that allows a court to "redistribute property and debts in a postjudgment proceeding if a party has failed to disclose property and debts as required by rules adopted by the supreme court or the party fails to comply with the terms of a court order distributing property and debts." N.D. Cent. Code § 14-05-24(3) (2021). Pennsylvania allows defrauded parties to place undisclosed assets into a constructive trust. 23 Pa. Cons. Stat. § 3505(d) (2021). As the special concurrence advocates, Oregon perhaps provides the most thorough statute on asset nondisclosure and contains several comprehensive remedies including forfeiture of the undisclosed asset and punitive damages. Or. Rev. Stat. § 107.452 (2021).

But under Iowa common law, we are left with whether the fraud is intrinsic or extrinsic to modify the judgment in an independent action in equity and we determine that asset nondisclosure on a stipulation is intrinsic fraud.

**B. Reasonable Diligence.** Even if we were inclined to hold that asset nondisclosure is extrinsic fraud, we still determine Susan would fail on the second element concerning reasonable diligence. "A party may institute a suit in equity . . . where, with reasonable diligence, he or she was not able to discover

the fraud or other grounds for vacating the judgment within one year after the judgment." *Johnson,* 489 N.W.2d at 415. "The applicant is not called upon to prove [s]he sought evidence where [s]he had no reason to apprehend any existed." *Westergard v. Des Moines Ry.,* 52 N.W.2d 39, 44 (Iowa 1952). As such, parties are entitled to rely on the belief that each other's financial disclosures are full and complete in dissolution proceedings, of course, assuming the parties do not waive it. *See* Iowa Code § 598.13(1)(*a*); *see also Schantz v. Schantz,* 163 N.W.2d 398, 406 (Iowa 1968) ("In the consummation of division of property the parties are required to exercise utmost good faith and to make full disclosure of all material facts . . . ."). However, asset nondisclosure in a dissolution proceeding does not automatically justify that a party could not have used reasonable diligence to find the undisclosed asset if extenuating circumstances exist. A party still "must exhaust the probable sources of information concerning [this] case; [s]he must use that of which [s]he knows, and [s]he must follow all clues which would fairly advise a diligent [person] that something bearing on h[er] litigation might be discovered or developed." *Westergard,* 52 N.W.2d at 44.

Greg alleges the exchanges with the GE consent form, which he provided to Susan's attorney three days before Susan signed the stipulation and four days before the dissolution decree incorporating the stipulation was approved, should have alerted Susan to the existence of the pension within one year of the dissolution decree. Specifically, Greg faults Susan and her attorney for not following up to retrieve a copy of the GE consent form and for not calling Greg to figure out which box or boxes to check. Susan claims that she had the

expectation that only one retirement plan existed with GE and that only one box would need to be checked on the GE consent form.

Our focus is on language in the GE consent form that contains an explicit relationship to the GE beneficiary designation form, which the district court and court of appeals did not consider. The GE consent form clearly creates an affirmative obligation on Susan by stating, "I understand that it is my responsibility to carefully review the beneficiary confirmation, when it is received by mail, to confirm that the beneficiary designation form fully represents my intentions." This disclaimer is a particularly noticeable "clue," as this statement contains the only underlined portion in the entire section that Susan was asked to complete on the GE Consent Form. *Westergard*, 52 N.W.2d at 44. Moreover, one of the boxes, the GE Savings & Security Program, also referenced the existence of the GE beneficiary designation form.

The likely purpose for this underlined disclaimer on the GE consent form is to prevent situations in which the pension holder misrepresents or changes the benefits to a spouse without the spouse's full knowledge. *See, e.g.*, *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 686–87 (7th Cir. 2010), *superseded by regulation as stated in Fessenden v. Reliance Standard Life Ins.*, 927 F.3d 998, 1003 (7th Cir. 2019) (describing that the GE beneficiary designation form must be executed with the GE consent form); *Metro. Life Ins. v. Van Meter*, No. 3:09–CV–709–H, 2010 WL 4237166, at *1 (W.D. Ky. Oct. 21, 2010) ("In order to designate as beneficiary someone other than a spouse for the GE Pension Plan or GE Savings and Security Program, the spouse must indicate consent by

signing *both* the change of beneficiary form and the consent form." (emphasis added)). This is particularly close to what occurred here. The statements on the GE consent form should have alerted Susan and her attorney, who had the chance to observe this GE consent form for nearly two weeks, to the separate existence of a GE beneficiary designation form, i.e. "that something bearing on h[er] litigation might be discovered or developed." *Westergard*, 52 N.W.2d at 44. Even if Susan and her attorney reasonably believed that the GE consent form was the GE beneficiary designation form, the disclaimer above is explicit that a separate GE beneficiary confirmation form would be sent by mail for Susan to confirm the changes that Greg made so as to fully represent her intentions. And though the GE consent form did not allow Susan to provide an address for the mailing, this absence of a place to provide her address should have led her to inquire whether another form—like the GE beneficiary designation form—existed for her to confirm her address.

Susan and her attorney would likely have been able to determine that fraud existed had they inquired into the existence of a GE beneficiary designation form or asked for the GE beneficiary confirmation in a subsequent mailing. They would have discovered Greg marked both the GE Pension Plan and GE Savings and Securities Plan. They also would have discovered that Greg listed his girlfriend instead of his children as the primary beneficiaries, contrary to Greg's stated intent. Moreover, Susan would have seen that the signature portion on the beneficiary designation form also required her signature. The fact that Susan was represented by counsel while Greg was not only amplifies this concern about

reasonable diligence. *See Wise v. Nirider*, 862 P.2d 1128, 1133 (Mont. 1993); *cf. Ray*, 647 S.E.2d at 240 n.2 ("[W]e take this opportunity to remind the Bar that parties must . . . be attentive to the warning signs of fraud [because] '[i]t is the policy of the courts not only to discourage fraud, but also to discourage negligence and inattention to one's own interests.' " (quoting *King v. Oxford*, 318 S.E.2d 125, 128 (S.C. Ct. App. 1984))). Had Susan used reasonable diligence, she would have been aware of the GE beneficiary consent form and discovered the GE pension's existence.

Susan has failed to prove her burden by clear and convincing evidence that Greg either engaged in extrinsic fraud or that she would not have been able to find the pension within one year by using reasonable diligence. Therefore, her independent action in equity fails. Based on our holding, we do not reach the question of whether Susan proved the required elements for fraud or whether the remedy of back benefits from a postdissolution asset is appropriate.

**C. Remaining Issues.** We use our discretion to let stand the court of appeals opinion explaining that remand is appropriate to determine whether Greg was entitled to attorney fees for the summary judgment on the modification action and whether the district court exceeded its discretion in the discovery sanction. We also use our discretion to let stand the court of appeals determination that appellate attorney fees are unwarranted. Accordingly, we remand this case as outlined by the court of appeals opinion.

Our determination that Greg's actions did not rise to the level of extrinsic fraud should not be interpreted as condoning his behavior. Greg intentionally

concealed the GE pension from Susan through several rounds of proposed stipulations and finalized documents that included full disclosure provisions. Additionally, Greg attempted to induce Susan into signing away any rights to death benefits of his GE retirement plans to his girlfriend under the guise that it would go to their children. Greg described the marital dissolution proceeding as a "goat roping event," and stated Susan did not "deserve any of the pension," and she had "taken everything I've had in the past, and now she's going for more." Based on these comments, it is unsurprising Greg acted callously when Susan first learned of the GE pension at the credit union nearly five years later. As the court of appeals majority mentioned, "His actions were plainly wrong and perhaps criminal." *See* Iowa Code § 720.2.

Greg's blatant antagonism toward Susan continued into the motion to vacate proceedings. The district court's order noted that the "Petition to Vacate has been on file for over three-and-a-half years, and for all of those three-and-a-half years Greg has dragged his feet and failed to produce any of the documentation from the GE pension plan." The district court awarded sanctions to Susan because these documents could have potentially shown Greg "knew of the pension at the time of the original Decree of Dissolution and that he intentionally and in bad faith failed to divulge that information." His actions may not have risen to meet the standard needed for a successful independent action in equity but they were certainly toxic.

**IV. Conclusion.**

For these reasons, we affirm the court of appeals opinion in part and vacate the court of appeals opinion in part. We remand to the district court for proceedings consistent with this opinion.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**

Christensen, C.J., and Waterman, Mansfield, Oxley, and McDermott, JJ., join this opinion. Waterman, J., files a concurrence, in which Christensen, C.J., joins. McDonald, J., files a dissent, in which Appel, J., joins.

#20–0076, *In re Marriage of Hutchinson*

**WATERMAN, Justice (concurring).**

I join the majority opinion but write separately to propose that our state legislature adopt a statute similar to Oregon's that would provide a remedy for victims like Susan Hutchinson. Our court resists the temptation to let bad facts make bad law and refrains from overruling our precedent governing the limited circumstances for reopening a judgment over a year later based on fraud. We should not undermine the finality of all judgments by relabeling false statements in court proceedings as extrinsic, rather than intrinsic, fraud.

Instead, Iowa could adopt a statute narrowly tailored to marital dissolutions. Oregon did so. And if such a statute were on the books now, Susan could recover the entire GE pension Greg intentionally concealed, along with her reasonable attorney fees as well as her compensatory and punitive damages. The Oregon statute provides:

> (1) A court that entered a judgment of marital annulment, dissolution or separation shall reopen the case upon the motion of either party if the moving party alleges that significant assets belonging to either or both of the parties:
>
>> (a) Existed at the time of the entry of the judgment; and
>>
>> (b) Were not discovered until after the entry of the judgment.
>
> (2) If the court finds that the assets were inadvertently omitted from the distribution of the marital estate, the court shall make such distribution of the omitted assets as is just and proper in all the circumstances.
>
> (3) If the court finds that the assets were intentionally concealed and thereby not included in the distribution of the marital estate, the court may order:

(a) The division of the appreciated value of the omitted assets;

(b) The forfeiture of the omitted assets to the injured party;

(c) A compensatory judgment in favor of the injured party;

(d) A judgment in favor of the injured party as punitive damages; or

(e) Any other distribution as may be just and proper in all the circumstances.

(4) The court may award attorney fees on any motion filed pursuant to this section. The court shall award attorney fees to the moving party if the court finds that assets were intentionally concealed and thereby not included in the distribution of the marital estate.

(5)(a) A motion alleging inadvertent omission of assets must be filed within two years after the date of discovery of the omission but no later than three years after the entry of the judgment.

(b) A motion alleging intentional concealment of assets must be filed within two years after the date of discovery of the omission but no later than 10 years after the entry of the judgment.

(6) A motion under this section may be filed with and decided by the trial court during the time an appeal from a judgment is pending before an appellate court. The moving party shall serve a copy of the motion on the appellate court. The moving party shall file a copy of the trial court's order in the appellate court within seven days after the date of the trial court order. Any necessary modification of the appeal required by the trial court order shall be pursuant to rule of the appellate court.

Or. Rev. Stat. § 107.452 (2022).

Section 107.452 was enacted to provide a remedy for intrinsic fraud, such as when the "*existence* of an asset was fraudulently concealed in the original dissolution proceeding." *In re Marriage of Conrad*, 81 P.3d 749, 754 (Or. Ct. App. 2003).[9] Section 107.452 thereby provides "an enforcement mechanism for the

---

[9]Section 107.452 also "authorizes relief from a dissolution judgment for the fraudulent concealment of the true ownership of a significant asset belonging to the parties or either of

statutory disclosure requirements," including the "full disclosure of all assets by the parties" that enables the court to "make [an equitable] division of property." *Id.* (quoting Or. Rev. Stat. § 107.105(1)(f)).

This statute would prospectively provide the relief unavailable to litigants like Susan under our precedent. The record shows Greg Hutchinson intentionally concealed his GE pension by omitting it from the assets disclosed in his financial affidavit and other discovery responses preceding their settlement and stipulated decree. Susan discovered the undisclosed GE pension within ten years. This statute permits the court to award a party in her position the entire asset, along with her attorney fees and compensatory and punitive damages. *Id.* § 107.452(3)(b)–(d), (4).

Iowa litigants should be able to rely on the veracity of assets and income set forth on the financial affidavits provided in marital dissolution actions without undertaking expensive discovery. Conducting discovery to "trust but verify" the disclosures needlessly drives up the costs of divorce. The Oregon statute provides a powerful incentive for soon-to-be-ex spouses to honestly and fully disclose assets. It helps lawyers convince clients to refrain from concealing assets because if they do and get caught, even up to ten years later, the entire asset could be forfeited to the ex-spouse rather than divided equitably in the manner of assets disclosed before the original decree. And when someone hides

---

them, even if the existence of the asset was known before the entry of judgment." *Conrad,* 91 P.3d at 750, 754 (requiring the trial court to reopen a dissolution judgment to conduct an evidentiary hearing on the husband's allegation that his wife fraudulently concealed her ownership interest in timber rights on her land).

an asset intentionally, it would provide a remedy currently unavailable to litigants under Iowa law.

Enactment of such legislation would come too late for Susan, but it would protect and benefit those to follow. Perhaps the Family and Juvenile Law Section of The Iowa State Bar Association could study and recommend a statute similar to Oregon's for its legislative agenda.

Christensen, C.J., joins this concurrence.

**McDONALD, Justice (dissenting).**

At the time of the parties' divorce, Greg believed that Susan "didn't deserve" any of his pension, so he decided to conceal its existence. He reasoned that if Susan and her lawyer "miss[ed] something," then "that is on them." Except he's wrong. Susan and her lawyer had no duty to inquire further and conduct discovery because Greg had an affirmative duty—imposed by statute, court rule, and court order—to disclose all of his assets both to Susan and to the district court. Greg violated this duty when he concealed the pension from Susan, and he violated this duty when he presented a stipulation to the district court and falsely stated under oath that he had "fully disclosed all of [his] assets, income and liabilities." The majority concludes that it is without power to correct Greg's fraud on Susan and the district court. I disagree and respectfully dissent.

I.

This court may vacate or modify a dissolution decree if fraud was practiced in obtaining it. Iowa R. Civ. P. 1.1012(2); *see In re Marriage of Brown*, 776 N.W.2d 644, 647 (Iowa 2009) (recognizing that a property division can be modified where there is "fraud, duress, coercion, mistake or some other grounds that would justify changing the decree"). Fraud is of two types: extrinsic and intrinsic. "Extrinsic fraud 'is some act or conduct of the prevailing party which has prevented a fair submission of the controversy.'" *In re Adoption of B.J.H.*, 564 N.W.2d 387, 391 (Iowa 1997) (quoting *Stearns v. Stearns*, 187 N.W.2d 733, 735 (Iowa 1971)). Extrinsic fraud "includes lulling a party into a false sense of

security or preventing the party from making a defense." *Id.* (quoting *Costello v. McFadden,* 553 N.W.2d 607, 612 (Iowa 1996)). "In contrast, intrinsic fraud inheres in the judgment itself; it includes, for example, false testimony and fraudulent exhibits." *Id.* A party may seek relief beyond the one-year period set forth in rule 1.1012 only where the fraud was extrinsic. *See Sorenson v. Sorenson,* 119 N.W.2d 129, 133–34 (Iowa 1963).

## A.

Iowa precedents hold that a party's failure to disclose property during a dissolution proceeding constitutes extrinsic fraud. The controlling case on this issue is *Graves v. Graves,* 109 N.W. 707 (Iowa 1906). In that case, the husband engaged in "fraudulent concealment of his property" and provided "false testimony . . . regarding the character and amount of his property." *Id.* at 707. The wife was not awarded any alimony as a result of the husband's concealment and false testimony. *Id.* Subsequently, more than one year later, the wife filed a petition to reopen the judgment. *Id.* This court held that the husband's "fraudulent concealment of his property" during the dissolution proceeding constituted extrinsic fraud and warranted reopening the case. *Id.* at 709. As in *Graves,* Greg concealed an asset and provided false information to the district court. As in *Graves,* Greg's concealment of his property precluded the district court from providing relief. As in *Graves,* Susan should be entitled to relief.

The court of appeals has applied *Graves* on several occasions, concluding that the failure to disclose assets during a dissolution proceeding constitutes extrinsic fraud that can serve as a basis for relief. In *In re Marriage of Rhinehart,*

the wife filed a petition to set aside the property division in a divorce decree on the ground the husband committed extrinsic fraud in failing to disclose assets (contingency fee cases) during the dissolution proceeding. No. 09–0193, 2010 WL 446560, at *1 (Iowa Ct. App. Feb. 10, 2010). The district court granted the petition, and the court of appeals affirmed. *Id.* The court of appeals concluded that "the record contains clear and convincing evidence [husband] committed extrinsic fraud." *Id.* at *3. The case was remanded for trial. After trial and another appeal, the court of appeals held the district court did not err in rejecting the husband's request to reconsider "the issue of whether he committed extrinsic fraud when he did not disclose the contingency fee cases." *In re Marriage of Rhinehart*, No. 12–0287, 2013 WL 530838, at *4 (Iowa Ct. App. Feb. 13, 2013).

In *In re Marriage of Stanbrough*, the court of appeals held there was "sufficient evidence of extrinsic fraud to warrant vacation of the economic and child custody provisions of the parties' decree." No. 99–840, 2000 WL 1157844, at *4 (Iowa Ct. App. Aug. 16, 2000). In that case, the husband prepared a stipulated decree and presented it to the wife for her signature. *Id.* at *2. She signed the decree "without really looking at it." *Id.* "The decree contained a statement that the parties waived the filing of financial affidavits." *Id.* The parties also waived the ninety-day waiting period and presented the proposed decree to the district court, which signed the decree. *Id.* Subsequently, the wife moved to vacate the economic, child custody, and support provisions of the decree due to the husband's failure to fully disclose his financial condition. *Id.* at *4. The court of appeals affirmed the district court's order vacating parts of the stipulated

decree on the ground that, among others, the husband committed extrinsic fraud in failing to "disclose the family financial condition in order to minimize his financial exposure." *Id.*

B.

I agree with the majority that the rationale of *Graves* is unclear. But unlike the majority, I do not conclude that the lack of clarity in *Graves* precludes relief for Susan. Instead, the lack of clarity in *Graves* presents this court with the chance to finally settle the issue of whether failure to disclose property during the settlement of a dissolution proceeding constitutes intrinsic fraud or extrinsic fraud. Contrary to the majority opinion, our precedents support the conclusion that fraud committed during settlement negotiations constitutes extrinsic fraud.[10]

Generally, intrinsic fraud occurs during trial, and extrinsic fraud occurs outside trial or relates to irregularity in the trial mechanism itself. We articulated this distinction in *Graves v Graves*:

> **What, then, is an extrinsic or collateral fraud, within the meaning of this rule? Among the instances given in books are such as these: Keeping the unsuccessful party away from the court by a false promise of compromise**, or purposely keeping him in ignorance of the suit; or where an attorney fraudulently pretends to represent a party, and connives at his defeat, or being regularly

---

[10]I agree with the criticism that the distinction between intrinsic fraud and extrinsic fraud is "very troublesome and unsound." 11 Charles Alan Wright et al., *Fed. Prac. & Proc. Civ.* § 2861, at 426 (2012). The distinction is "difficult to understand and apply." *Id.* That being said, it appears to me that there is a significant and easily drawn distinction between fraud inducing settlement without trial and fraud occurring during other stages of a proceeding that is not uncovered during the course of trial on the merits. In any event, the parties have not challenged the distinction or suggested an alternative framework.

employed, corruptly sells out his client's interest. *United States v. Throckmorton*, 98 U. S. 65, 66, 25 L. Ed. 93, and authorities cited.

> **In all such instances the unsuccessful part is really prevented, by the fraudulent contrivance of his adversary, from having a trial; but when he has a trial, he must be prepared to meet and expose perjury then and there. He knows that a false claim or defense can be supported in no other way; that the very object of the trial is, if possible, to ascertain the truth from the conflict of evidence, and that, necessarily, the truth or falsity of the testimony must be determined in deciding the issue. The trial is his opportunity for making the truth appear. If, unfortunately, he fails, being overborne by perjured testimony, and if he likewise fails to show the injustice that has been done him on motion for a new trial, and the judgment is affirmed on appeal, he is without remedy.** The wrong, in such a case, is, of course, a most grievous one, and no doubt the Legislature and the courts would be glad to redress it if a rule could be devised that would remedy the evil without producing mischiefs far worse than the evil to be remedied. Endless litigation, in which nothing was ever finally determined, would be worse than occasional miscarriages of justice; and so the rule is that a final judgment cannot be annulled merely because it can be shown to have been based on perjured testimony; for if this could be done once, it could be done again and again ad infinitum.

*Graves*, 109 N.W. at 709 (emphases added).

Since *Graves*, our cases have emphasized the critical distinction between fraud committed in trial (or that should have been discovered by the end of trial), and fraud committed outside trial or that prevented trial from occurring. "Intrinsic fraud 'occurs *within the framework of the actual conduct of the trial* and pertains to and affects the determination of the issue presented therein. It may be accomplished by perjury, or by the use of false or forged instruments, or by concealment or misrepresentation of evidence.' " *Mauer v. Rohde*, 257 N.W.2d 489, 496 (Iowa 1977) (emphasis added) (quoting *Auerbach v. Samuels*, 349 P.2d 1112, 1114 (Utah 1960)). In contrast, extrinsic fraud is "that fraud which keeps

a litigant from presenting the facts of his or her case and prevents an adjudication on the merits." *State ex rel. Iowa Dep't of Hum. Servs. v. Meyer*, 381 N.W.2d 633, 634–35 (Iowa 1986) (quoting *Mauer*, 257 N.W.2d at 496).

In family law matters, our cases hold that misrepresentations occurring outside trial constitute extrinsic fraud. In *Tollefson v. Tollefson*, a wife untimely petitioned to set aside a default judgment entered against her in a dissolution proceeding where the husband falsely represented to the court that the wife had deserted him. 114 N.W. 631, 632 (Iowa 1908) (per curiam). We explained that "[f]alse testimony *in the trial* of the original action" was not sufficient to warrant relief. *Id.* (emphasis added). However, events outside of trial, such as "acts or promises lulling the defrauded party into false security, or preventing him from making defense" may constitute "extrinsic or collateral fraud" sufficient to warrant relief. *Id.* at 632–33.

In *Brown v. Blanchard*, this court affirmed the district court's grant of the wife's petition to reopen a dissolution decree. 35 N.W.2d 858, 869 (Iowa 1949). In that case, the husband made misrepresentations to his wife regarding the terms of a property settlement that he presented to the district court. *Id.* We explained that the husband's fraud "was extrinsic and collateral to the proceedings in the divorce action" because he "induced and prevented the defendant from appearing in court and contesting the additional claim wrongfully injected into the case." *Id.* at 869–70. We further explained the wife was entitled to relief because the misrepresentations were a "fraud upon the defendant and a fraud upon the court." *Id.* at 869.

Similarly, in *In re Marriage of Short*, the wife filed for dissolution but assured the husband that he need not respond and that she would not seek child support. 263 N.W.2d 720, 721 (Iowa 1978). Based on these representations, the husband took no action, and default judgment was entered. *Id.* After learning that he was behind on his child support obligations, the husband petitioned to reopen the decree. *Id.* at 721–22. We concluded this was extrinsic fraud and held the husband was entitled to proceed because the wife lulled him "into a false sense of security" and "prevent[ed] him from making a defense." *Id.* at 723.

In *In re Marriage of Kinnard*, the court of appeals vacated a decree dissolving the parties' second marriage to each other. 512 N.W.2d 821, 824 (Iowa Ct. App. 1993). The court held that the husband committed extrinsic fraud when he made false representations to his wife to induce her to remarry him to avoid the financial consequences from the first decree and then dissipated his assets upon remarriage to obtain a more favorable decree. *Id.* at 823–24.

As in these cases, Greg lulled Susan into a false sense of security by making a false offer of compromise and settlement that failed to include all material assets. This misrepresentation occurred prior to trial and prevented Susan from conducting additional discovery and proceeding to trial. The "purpose for vacating judgments resulting from extrinsic fraud is to promote the policy of law that every cause of action should be tried on its merits." *Costello*, 553 N.W.2d at 612. When a party commits fraud during settlement negotiations, he lulls the other party into a false sense of security and effectively prevents a

trial on the merits of the claim. *See id.* "A fraudulent concealment of facts which would have caused the judgment not to have been rendered will constitute extrinsic fraud." *Bradley v. Bd. of Trs. of Wash. Twp.*, 425 N.W.2d 424, 425 (Iowa Ct. App. 1988); *see also Mauer*, 257 N.W.2d at 496; *Harrison v. Keller*, 117 N.W.2d 477, 480 (Iowa 1962) ("We think a fair examination of the record shows the claimant has sustained the burden of showing that fraud was exercised by the carrier in procuring the commutation and that the trial court erred in not so holding."); *Scheel v. Superior Mfg. Co.*, 89 N.W.2d 377, 384 (Iowa 1958) ("It is clear that because of these matters plaintiff was deprived of his rights, the commissioner was induced to exercise jurisdiction he would not otherwise have exercised, and there was never any real trial or hearing upon the question of commutation. We are content to hold, in view of all the facts, the commissioner's approval was obtained by the casualty company's extrinsic fraud practiced upon plaintiff and the commissioner.").

Consistent with our precedents in *Graves*, *Rhinehart*, *Stanbrough*, *Tollefson*, *Brown*, *Short*, and *Kinnard*, other courts hold that the nondisclosure of material assets outside court during the settlement of a dissolution proceeding entitles the other party to relief.[11] As the Supreme Court of Kansas explained:

---

[11] *See, e.g., Smith v. Cahill*, 72 So. 3d 692, 698–99 (Ala. Civ. App. 2011) (stating a property settlement may be set aside if one party conceals assets or liabilities); *Worthey v. Worthey*, 491 So. 2d 953, 956 (Ala. Civ. App. 1986) (reversing summary judgment and allowing wife to proceed with action to set aside decree where the husband had induced the wife to sign a separation agreement by misrepresenting to the wife the parties' net worth); *Bates v. Bates*, 400 P.2d 593, 598 (Ariz. Ct. App. 1965) (holding wife could maintain an action to recover the value of real estate not disclosed in a stipulated decree); *Kuehn v. Kuehn*, 102 Cal. Rptr. 2d 743, 748 (Ct. App. 2000) ("Further, concealment of community assets is extrinsic fraud and therefore a basis for equitable relief from the judgment."); *Casanova v. Casanova*, 348 A.2d 668, 668–69 (Conn. 1974) (per curiam) (holding wife could proceed where husband misrepresented assets and income and

We are of the opinion that the facts alleged in the petition were sufficient to show defendant withheld the true extent and value of their property and fraudulently induced plaintiff to enter into and subsequently submit to the trial court for its approval the property settlement agreement, wherein defendant allegedly received substantially all of the property, as a fair and equitable division of the property of the parties, thereby preventing a fair presentation and submission of that issue to the court. Inasmuch as it was the duty of the court, in granting the decree of divorce, to make an equitable division of the property acquired by the parties during their marriage, the alleged action on the part of the defendant constituted extrinsic fraud. We are of the opinion that had the trial court known the true facts regarding the extent and value of the property of the parties as alleged, the judgment would obviously have been different.

*Hodge v. Hodge*, 349 P.2d 947, 950 (Kan. 1960).

A significant rationale for providing such relief is to place family law litigants on the same footing as other civil litigants. "[S]ettlement agreements are essentially contractual in nature." *Phipps v. Winneshiek County*, 593 N.W.2d 143, 146 (Iowa 1999). "A stipulation and settlement in a dissolution proceeding

---

stating that "a misrepresentation of assets and income is a serious and intolerable dereliction on the part of the affiant which goes to the very heart of the judicial proceeding"); *Schmeusser v. Schmeusser*, 559 A.2d 1294, 1295–96 (Del. 1989) (en banc) ("[W]e conclude that certain intentional and material statements and omissions of the defendant constituted fraud on both the Family Court and the wife. Accordingly, we reverse and remand."); *Compton v. Compton*, 612 P.2d 1175, 1182–83 (Idaho 1980) (allowing relief for nondisclosure of property during "negotiations leading to the formation of the property settlement agreement during marriage" due to the fiduciary duties each spouse owes the other); *Troxell v. Troxell*, 563 S.W.2d 135, 144–45 (Mo. Ct. App. 1978) (affording wife relief for nondisclosure by husband, which induced property settlement); *Pasko v. Trela*, 46 N.W.2d 139, 146 (Neb. 1951) (holding that "the divorce decree approving the property settlement here involved should be and hereby is vacated and set aside" due to the husband's nondisclosure of assets); *Hamilton v. Hamilton*, 410 N.W.2d 508, 520 (N.D. 1987) (holding wife was not precluded from prosecuting independent action to obtain relief from decree after husband failed to disclose divisible property); *Creeks v. Creeks*, 619 A.2d 754, 756–57 (Pa. Super. Ct. 1993) (stating there is strict liability for the failure to disclose assets during dissolution proceedings and, as a remedy, the court can place a constructive trust on the nondisclosing party's assets); *Ray v. Ray*, 647 S.E.2d 237, 241 (S.C. 2007) (holding nondisclosure of assets during dissolution proceeding constitutes extrinsic fraud); *St. Pierre v. Edmonds*, 645 P.2d 615, 618–20 (Utah 1982) ("An intentional act by a party in a divorce action which prevents the opposing party from making a full defense 'amounts to fraud upon the opposing party, as well as upon justice, justifying a court in setting aside the decree so obtained.' " (quoting *Berg v. Berg*, 34 N.W.2d 722, 724 (Minn. 1948))).

is a contract between the parties." *In re Marriage of Jones*, 653 N.W.2d 589, 593–94 (Iowa 2002). In non-family law litigation the parties can enter into a settlement agreement without court approval. In non-family law litigation, a party alleging fraud, misrepresentation, or concealment during the process of negotiating a settlement may seek relief, electing between rescission of the settlement agreement or an independent action for damages. *See Phipps*, 593 N.W.2d at 147. In family law litigation, the parties must present a settlement to the district court for approval and incorporation into the decree. *See In re Marriage of Udelhofen*, 538 N.W.2d 308, 310 (Iowa Ct. App. 1995). Because the district court must approve the settlement and incorporate the settlement into the decree, the only way to provide family law litigants the same relief as other litigants is to conclude settlement fraud is extrinsic and allow for a remedy. But the majority denies this and denies family law litigants the same relief this court affords all other civil litigants.

The majority's refusal to treat settlement fraud in dissolution proceedings as extrinsic fraud is particularly troubling because the fraud in dissolution proceedings is more egregious. As noted, in civil litigation the parties generally do not need to seek court approval of a settlement agreement. In civil litigation, where one party commits fraud during settlement, the party commits fraud against the other party. In dissolution cases, however, the district court must approve the parties' settlement. In dissolution cases, where one party commits fraud during settlement, the party commits fraud against the other and also

perpetrates fraud on the district court. As the Supreme Court of Minnesota explained, this greater fraud requires court intervention:

> The [lower court] cited *Kupferman v. Consolidated Research & Mfg. Corp.*, 459 F.2d 1072, 1078 (2d Cir. 1972), as authority for the notion that fraud on the court only includes that species of fraud which defiles the court itself or is perpetrated by officers of the court. This court refuses to adopt such a narrow definition of fraud in marriage dissolution cases. While such a standard may be applicable to ordinary civil litigation, it has no place in family law. In dissolution cases, the court sits as a third party, representing all of the citizens of the State of Minnesota to see that a fair property distribution is made.
>
> Because of the court's unique role in marriage dissolution cases, the narrow standard of fraud on the court articulated in [nonfamily law cases] is inappropriate. In a stipulated marriage dissolution, if one party defrauds the other, he or she necessarily defrauds the court which sits as a third party to the stipulation. This is significantly different from stipulations involving ordinary commercial parties and a court that is not a party to the stipulation. While we decline to outline a precise definition of fraud on the court, we will focus on whether the offending party engaged in an unconscionable scheme or plan to influence the court improperly. Under this approach, the difference between fraud and fraud on the court is primarily a difference of degree rather than kind.

*Maranda v. Maranda*, 449 N.W.2d 158, 165 (Minn. 1989) (en banc) (citations omitted).

Just consider the facts of this case. In this case, Greg committed fraud with respect to Susan during the settlement of their case. If this were non-family law litigation, Susan could seek to rescind the settlement agreement or sue for damages. In this case, however, Greg also perpetrated a fraud upon the district court. The stipulation to the court provided that "each party has fully disclosed all of their assets, income and liabilities to the other either in the form of financial affidavits or through sharing information." Paragraph 15 of the disclosure given

to the district court provided for the division of securities and retirement plans, but Greg did not disclose the GE pension at issue in this case to the district court. Greg swore under oath that the disclosure and statements to the district court were true, but they were not. Even though the fraud is more egregious in this case and directly implicates the district court, the majority nonetheless concludes Susan is entitled to less relief than other civil litigants.

## C.

I would adhere to our well-established precedents in this area, follow the better-reasoned authority from other jurisdictions, and hew to common sense, and hold that Greg's failure to disclose material assets to Susan and to the district court during the settlement of this dissolution action constitutes extrinsic fraud.

## II.

The majority also concludes that it cannot remedy Greg's fraudulent nondisclosure because Susan should have acted with greater diligence to detect the fraud. The majority opinion rests on the erroneous premise that Susan had a duty to inquire further regarding Greg's pension. She did not. During pretrial settlement of this dissolution action, Greg had an affirmative obligation to disclose his property, including his pension.

There is a strong public policy in favor of amicable settlement of dissolution matters. Iowa Code section 598.7 (2016) provides for mediation in any dissolution of marriage action. This court "has found mandatory mediation or mandatory judicial settlement conferences to be effective in family law cases."

Iowa Sup. Ct. Supervisory Order, *In the Matter of Mandatory Mediation in Family Law Cases* (Jan. 20, 2022). This court required each judicial district to create an "Informal Family Law Program" to "expedite[] the resolution of family law cases involving less complicated factual circumstances." Iowa Sup. Ct. Supervisory Order, *In the Matter of the Informal Family Law Trial Program for Self-Represented Litigants* (Dec. 1, 2020).

Critical to the successful settlement of dissolution proceedings is complete transparency with respect to the parties' property, which must be accounted for and equitably divided by the district court. Complete transparency is required by statute. Iowa Code section 598.13 provides:

> 1. *a.* Both parties shall disclose their financial status. A showing of special circumstances shall not be required before the disclosure is ordered. A statement of net worth set forth by affidavit on a form prescribed by the supreme court and furnished without charge by the clerk of the district court shall be filed by each party prior to the dissolution hearing. However, the parties may waive this requirement upon application of both parties and approval by the court.
>
> *b.* Failure to comply with the requirements of this subsection constitutes failure to make discovery as provided in rule of civil procedure 1.517.

Complete transparency is also required by rule. Each party in a domestic relations action must provide, "without awaiting a discovery request," certain financial information and documentation, including a "current financial affidavit, including a description of all assets and liabilities." Iowa R. Civ. P. 1.500(1)(*d*)(1). Each party must also provide "[s]tatements of account or other documentation to support the assets or liabilities listed in the financial affidavit." *Id.* r. 1.500(1)(*d*)(4). And in this particular case, complete transparency was

required by court order. The district court ordered the parties to be transparent and disclose their financial information. The order specifically noted the requirement was "designed to encourage you and the other person in the case to exchange information and to discuss possible settlement of your case before going to trial." Statute, rule, and court order required Greg to affirmatively disclose his property, including his pension. Susan had no duty to diligence the matter further, and the majority errs in holding otherwise.

The majority's conclusion that Susan was required to conduct further inquiry undermines the public policy favoring settlement of dissolution actions. The majority's holding also incents parties to commit fraud during settlement negotiations in the hope they can get away with it, as Greg does today. The majority's holding in this case incents lawyers and litigants to not settle cases and to instead conduct further discovery out of necessity to ensure that all material property has been identified. The district court got it exactly right in concluding that Greg's gamesmanship cannot be rewarded:

> Greg had multiple opportunities and was under multiple obligations to affirmatively fully disclose all of his assets, particularly his retirement assets. He did not do so. [Susan's counsel] had no obligation to investigate something that Greg had failed to advise her even existed. Greg should not in any way be rewarded for engaging in this kind of gamesmanship, fraud and secretion of assets.

The majority rewards Greg and perverts the orderly administration of justice in this case and in future cases by incenting similar conduct by other litigants.

### III.

I cannot agree with the majority's limited view of this court's authority to administer justice. This court has sufficient authority to police misconduct

within the court system it oversees and to provide relief where one party acts contrary to statute, rule, and court order in a way that undermines the very policies promoted by this court. For these reasons, I respectfully dissent.

Appel, J., joins this dissent.